# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00634-SCT

*MILTON FLORA, JR. a/k/a MILTON HAYES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/4/2003 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | VIRGINIA LYNN WATKINS |
| | THOMAS M. FORTNER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | FAYE PERTERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/19/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This is an appeal by Milton Flora, Jr., from the Hinds County Circuit Court where he was convicted of murder under the provisions of Miss. Code Ann. § 97-3-19 and sentenced to life in the custody of the Mississippi Department of Corrections.

## FACTS

¶2.     Around midnight on September 10, 2001, Flora and his cousin, Roger Johnson, went to the apartment of Flora's former girlfriend, Subrenda Levy. There was contradictory

evidence as to whether Flora knocked on the door or whether the door was kicked in by either Flora or Johnson, and as to which one was actually carrying a gun. Once the door was opened, Flora and Johnson were met by Ray Spann and an altercation followed between Flora and Spann in which shots were fired. Following the confrontation, Spann left the apartment and was soon found dead in a nearby vacant lot. An autopsy revealed the cause of Spann's death was a gunshot wound from a .32 caliber pistol.

¶3. Flora and Johnson left Levy's apartment and were later found by police in the apartment of Johnson's mother, Sebrina Johnson. Upon arriving at Sebrina Johnson's apartment, the police awakened Flora, who was asleep on a sofa, wearing blood stained clothing. When told to stand up, he did so, and the police recovered two weapons from where he had been sleeping: the .32 caliber pistol later identified as the murder weapon, and a .380 caliber pistol. At that point, the officers asked Flora his name without first informing him of his *Miranda* rights. He gave the officers a false name and was subsequently arrested. A gunshot residue test revealed that Flora had residue on both of his hands and DNA test results showed that the blood on his clothing was that of Spann.

¶4. Flora testified in his own defense. Aggrieved by his conviction and sentence, he now appeals, raising nine issues: 1) denial of motions for mistrial; 2) denial of requests for handwriting exemplars and for authentication of exculpatory documents by the Mississippi crime lab; 3) exclusion of the handwritten statement of a co-defendant; 4) overruling of repeated objections to prosecutorial misconduct; 5) denial of introduction of a weapon other

2

than the murder weapon; 6) speedy trial violations; 7) denial of names of arresting officers and criminal histories of the victim and witnesses; 8) denial of questions regarding a blood test of the victim; and 9) denial of motions for directed verdict, peremptory instruction, and J.N.O.V. Finding no reversible error, we affirm.

## ANALYSIS

### I.  DENIAL OF MOTION FOR MISTRIAL.

¶5.     The standard of review for the denial of a mistrial is abuse of discretion. *Spann v. State*, 771 So. 2d 883, 889 (Miss. 2000). This Court has held that a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial. *Roundtree v. State*, 568 So. 2d 1173, 1177 (Miss. 1990). Unless "serious and irreparable damage" results from an improper comment, the judge should "admonish the jury then and there to disregard the improper comment." *Johnson v. State*, 477 So. 2d 196, 210 (Miss. 1985). While deference is given to the decisions of trial judges, each case must stand on its own facts in order to determine whether a particular decision constitutes reversible error. *Henderson v. State*, 403 So. 2d 139, 140 (Miss. 1981).

¶6.     During the direct examination of Officer Dexter McLaurin, the State questioned him about a conversation he had with Subrenda Levy, who was an eyewitness to the events. Flora objected to the question, "did you ask her to identify the shooter?" The trial court initially overruled that objection, and, when the State re-asked the question, Officer McLaurin stated: "Yes, I did. Once she identified Milton Flora as one of the suspects, then I asked her then

3

was he the shooter, and she had told me yes . . . . " Flora again objected to this statement on the basis of hearsay, and moved for a mistrial. The trial court sustained the objection; instructed the jury to disregard the statement; and denied the motion for a mistrial.

¶7. Flora correctly argues that the statement in question was hearsay, but the issue to be addressed here is whether the trial court should have granted Flora's motion for a mistrial based on the jury hearing the improper comment. Flora maintains this Court's holding in **Snelson v. State**, 704 So. 2d 452 (Miss. 1997), should apply in this case. In **Snelson**, prosecutors elicited testimony in violation of a motion in limine, to show that the defendant had told the testifying witness the victim was the "third or fourth" person he had killed. The defense objected and moved for a mistrial; the trial court sustained the objection, denied the motion for mistrial, and instructed the jury to disregard the statement. Snelson was convicted and sentenced to death. On appeal, this Court reversed, finding the trial court's admonition to the jury was insufficient, and such improper testimony could "inflame or improperly influence the jury" and the trial court erred in not declaring a mistrial. *Id*. at 458**.**

¶8. However, **Snelson** is clearly distinguishable because it involved improper evidence which informed the jury that the defendant may have committed as many as three other murders - violent crimes similar to the one for which he was on trial. This testimony in **Snelson** was no doubt highly prejudicial to his case.

¶9. While the statement made by Officer McLaurin was improper, it certainly did not rise to the level of resulting prejudice as did the statement made in **Snelson**. Quite simply, the

comparison of the *Snelson* statement to the statement in question in the present case is inapposite. The *Snelson* statement was highly prejudicial, and, in reality, could not be disregarded by a reasonable jury.

¶10. When a trial judge sustains an objection to testimony and directs the jury to disregard the statement, "it is presumed, *unless otherwise shown*, that the jury followed the directions of the trial judge to disregard such comment or testimony." *Holifield v. State*, 275 So. 2d 851, 856 (Miss. 1973) (emphasis added). Flora failed to show the improper testimony was not disregarded or could not have been disregarded by the jury. The statement of Subrenda Levy to Officer McLaurin was far from being the only piece of evidence linking Flora to the murder scene, the victim and the murder weapon. After McLaurin's testimony, the statement was not mentioned again. Proper action was taken in sustaining Flora's objection and instructing the jury to disregard the statement. We must presume the jury followed the directions of the trial judge. The denial of Flora's motion for mistrial was not an abuse of discretion.

## II. DENIAL OF REQUESTS FOR HANDWRITING EXEMPLARS AND FOR AUTHENTICATION OF DOCUMENTS BY THE MISSISSIPPI CRIME LAB.

¶11. The standard of review of the trial court's denial of expert assistance is whether an abuse of discretion occurred such that the defendant was denied due process whereby the trial was fundamentally unfair. *Richardson v. State*, 767 So. 2d 195, 197 (Miss. 2000) (citing *Coleman v. State*, 697 So.2d 777, 780 (Miss. 1997)). "The State does not have a constitutional obligation to provide indigent defendants with the costs of expert assistance

5

upon every demand." ***Townsend v. State***, 847 So. 2d 825, 829 (Miss. 2003) (citing ***Johnson v. State***, 476 So. 2d 1195, 1202 (Miss. 1985)). "Mississippi case law states expert assistance should be granted upon showing of substantial need." ***King v. State***, 784 So. 2d 884, 888, (Miss. 2001) (citing ***Holland v. State***, 705 So. 2d 307, 333 (Miss. 1997)).

¶12.   Flora requested the trial court to order Roger Johnson (Flora's cousin and co-defendant) and Derrick Jones to submit to handwriting exemplars, in order to authenticate two statements allegedly written by Johnson and Jones.  These statements suggested Johnson was the person who actually shot Ray Spann, and thus could be exculpatory evidence for Flora.  The State opposed the motion, arguing that the statements were neither signed nor dated, that forcing a co-defendant to submit to a handwriting exemplar would violate his Fifth Amendment right against self-incrimination, and that they were blatant hearsay.  The trial court denied the motion, but Flora renewed it at a subsequent  hearing. The trial court again denied Flora's motion and allowed the statements to be marked for identification purposes only.

¶13.   Rule 901 of the Mississippi Rules of Evidence governs the authentication of documents in Mississippi trial courts.  Flora sought to have the exemplars and the statements in question authenticated by an expert witness under Rule 901(b)(3), which provides that a document may be authenticated by "comparison by the trier of fact or by expert witness with specimens which have been authenticated."  M.R.E. 901(b)(3).  While this is an acceptable form of authentication, it is certainly not the only form.

6

¶14.    A handwritten document may be authenticated by someone who is familiar with the handwriting of the purported writer of the document.  M.R.E. 901(b)(2).  This rule of evidence is well-established in Mississippi case law.  "A witness who in the course of official business or in any other way has acquired by experience a knowledge of a person's handwriting, may state his opinion as to whether a particular writing was made by such person." *Wiggins v. State*, 80 So. 2d 17, 19 (Miss. 1955).  In *Wiggins*, a criminal defendant was convicted of capital murder due, in part, to a handwritten letter in which he confessed to the murder. *Id*. On appeal, this Court upheld the admission of that letter which was authenticated by a woman who was familiar with the defendant's handwriting. *Id.*

¶15.    In *Schmerber v. California* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the U.S. Supreme Court discussed the reach of the Fifth Amendment right against self-incrimination. *Schmerber* dealt with the withdrawal of blood from a DUI suspect, and the Supreme Court held that such withdrawal did not violate the suspect's Fifth Amendment privilege. *Id*. at 772.  It further held that the Fifth Amendment privilege reaches to compulsion of an "accused's communications" and not to "compulsion which makes a suspect or accused the source of real or physical evidence." *Id*. at 763-64.  This holding was specifically extended to handwriting exemplars in *Gilbert v. California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967).  We recognized the *Gilbert* holding in *Burns v. State*, 729 So. 2d 203, 216 (Miss. 1998), where we stated that "a mere handwriting exemplar, in

7

contrast to the content of what is written, like the voice or body itself, is an identifying characteristic outside [the] protection [of the Fifth Amendment]."

¶16.    The handwriting exemplars requested by Flora would have been used to authenticate the statements allegedly written by Johnson and Jones, not as testimonial evidence at trial. Therefore, in light of the holdings of the U.S. Supreme Court and this Court, there would have been no violation of the United States and Mississippi Constitutions in requiring Roger Johnson and Derrick Jones to submit handwriting exemplars in order to authenticate their alleged statements.  However, if the trial court had ordered the handwriting exemplars as requested by Flora (assuming that Johnson and Jones would have cooperated), a handwriting expert would have been required to compare the exemplars to the alleged written statements in order to authenticate them.  Flora requested that an expert be appointed by the trial court at the expense of the State because his client "[was] indigent and [could] not afford to obtain the requested assistance."

¶17.    There is nothing in the record that indicates Flora ever attempted to have these statements authenticated by locating someone familiar with the handwriting of Johnson or Jones.  There is no indication there was a good faith effort to locate anyone who might have been able to authenticate these statements.  Instead, Flora immediately asked the State of Mississippi to provide the funds for him to hire an expert who may or may not have found that these statements of mysterious origin[1] were actually what Flora purported them to be.

---

[1] The statements were unsigned, not dated and had no indicia of reliability whatsoever.  When questioned about when he obtained these statements, which were not

Because there was never an attempt by Flora to authenticate these statements in any other way, we cannot properly hold there was a "substantial need" for expert assistance under the standard from **King** and **Holland**.

¶18.   Though a court-ordered handwriting exemplar would not have violated the Fifth Amendment privilege of either Jones or Johnson, it is unlikely they would have cooperated with the trial court's order.  Even if they had cooperated, a handwriting expert still would have been required to authenticate the statements.  There was no error in denying Flora's motion to compel handwriting exemplars from Johnson and Jones, and to appoint the Mississippi crime lab to authenticate the documents.  Further, it was not an abuse of discretion for the trial judge to refuse to provide funds for experts to aid in Flora's defense.

### III.   EXCLUSION OF THE HANDWRITTEN STATEMENT OF ROGER JOHNSON.

¶19.   This assignment of error is not properly before the Court.  There is no indication in the record that Flora ever attempted to put into evidence the statement allegedly written by Roger Johnson.  However, even if he had attempted to put the statement into evidence, its exclusion by the trial court would not have been error, as explained in Issue II, supra.

¶20.   In support of his argument, Flora relies on **Green v. Georgia**, 442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979), in which the United States Supreme Court found a violation of the Due Process clause of the Fourteenth Amendment when a Georgia trial court excluded

---

revealed in reciprocal discovery, counsel for Flora replied, "I don't know," and "It doesn't matter . . . ."

exculpatory evidence based upon a hearsay objection at the sentencing phase of a capital murder case. Flora's reliance is misplaced, however, because *Green* differs in numerous significant ways.

¶21. The exculpatory evidence in *Green* was testimony from a witness with personal knowledge of what was told to him by Green's co-defendant. Further the exculpatory evidence was being presented at the sentencing phase, not the trial phase. The co-defendant had claimed he killed the victim while Green was out running an errand. The co-defendant had already been convicted and sentenced to death, and the testimony of the same witness was allowed at the co-defendant's trial. S*ee also Moore v. State*, 243 S.E.2d 1, 4 (Ga. 1978).

¶22. In contrast, this is a non-capital case, and the statement which Flora sought to have admitted had no indicia of trustworthiness. Flora argues: "[h]ad the trial court taken exemplars as requested and had the documents been authenticated, it would [have been] up to the jury to decide the weight and credibility of the evidence." However, the fact remains that the statement was not authenticated and thus, could not be admitted into evidence.

¶23. Because Flora never attempted to put the statement into evidence, this issue is not properly before this Court, and thus is procedurally barred. However, if Flora had attempted to put the statement in at trial, it would have been proper to find it inadmissible. This assignment of error is without merit.

## IV.   OVERRULING OF REPEATED DEFENSE OBJECTIONS TO PROSECUTORIAL MISCONDUCT.

¶24. A defendant is entitled to a fair and impartial trial before a jury not exposed to abusive arguments appealing to their passions and prejudices. Although ours

10

is an adversary system, prosecuting attorneys must exercise caution and discretion in making extreme statements in their arguments to the jury, if for no other reason than to save themselves, the defendant, the court and the jury the additional time, expense and effort involved in a retrial.

*Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989) (citing *Keyes v. State*, 312 So. 2d 7, 10 (Miss. 1988)).

¶25.    The test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice. *Johnson v. State*, 596 So. 2d 865, 869 (Miss. 1992) (quoting *Dunaway*, 551 So. 2d at 163). Flora alleges several instances of prosecutorial misconduct, and we address each of them in turn.

### A. Prosecutors questioned witnesses and commented upon matters contrary to the rulings of the trial court

¶26.    Flora argues generally that misconduct by the prosecution prejudiced the jury against him, and more specifically that improper comments were made by the prosecution during the examination of witnesses and were pervasive throughout the trial. One such comment was made at the beginning of cross-examination of Flora by the State, when the first phrase spoken by the prosecutor was "[p]oor, poor Milton Flora". Flora also complains that earlier in the trial, the prosecutor said, "[l]et's try again," in response to an objection as to leading, which was sustained by the court during the direct examination of a witness. In both of these instances, timely objections were made by defense counsel, sustained by the trial court, and the jury was instructed to disregard the comments. There were other comments made by the

11

prosecution and pointed out by Flora which were arguably improper, but objections to them were likewise sustained by the trial court. It cannot be said that individually or cumulatively these comments prejudiced Flora to the point of depriving him of a fair trial. "A criminal defendant is not entitled to a perfect trial, only a fair trial." *McGilberry v. State*, 741 So. 2d 894, 924 (Miss. 1999) (citing *Sand v. State*, 467 So. 2d 907, 911 (Miss. 1985)).

¶27. Flora also points to instances where the prosecution asked improper questions of witnesses. First, during the cross-examination of Flora, the prosecutor asked him about the results of the gun powder residue test. Defense counsel objected before Flora could answer and the trial court sustained the objection. Later in the cross-examination, the prosecutor asked Flora if he had gun residue on him, and he said he didn't know, and again an objection by defense was sustained.

¶28. Flora cites *Henderson v. State*, 403 So. 2d 139 (Miss. 1981), in support of his argument that this duplicate questioning was reversible error. The prosecutor in *Henderson* was cross examining a defense witness and inquired about past convictions of the witness. An objection and motion for mistrial were made, and the trial court sustained the objection and denied the motion for mistrial. During cross-examination of the very next witness, the prosecutor asked essentially the same question. Again the trial court sustained a defense objection and denied a motion for mistrial. This Court said that the compounding of the improper conduct by the prosecutor, who had just heard the court's admonishment to the jury

12

on the same subject, created too great a prejudice, and the case was reversed and remanded. *Id.* at 140-41.

¶29.    Flora also complains that during the direct examination of another witness, the defense objected to an improper question, and the prosecutor asked the same question after the objection was sustained. In this instance, however, the record reflects that the prosecutor was simply trying to rephrase the question to make it acceptable to the trial court. The misconduct found in *Henderson* is clearly distinguishable from the actions of the prosecutor in the present case.

¶30.    The trial judge took proper action to ensure Flora received a fair trial. There is no proof any of the comments made by the prosecution were improper enough to meet the *Henderson* standard, nor is there any proof that the comments resulted in the jury being prejudiced against Flora.

### B. Denial of motion for mistrial for violation of a suppression order

¶31.    During opening statements, the prosecutor told the jury that when the police arrived at Sebrina Johnson's apartment, they awakened Flora, asked him his name, and he gave them false names. The defense objected and moved for a mistrial, claiming this was a violation of a pretrial order. Following a bench conference, the court overruled the objection and denied the motion for mistrial.

¶32.    In a pretrial hearing there had been a lengthy discussion about statements that were made by Flora at the time of his arrest. Flora argued that because he was not given a

13

*Miranda* warning before the police asked him his name, that he gave false names was not admissible at trial. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Flora now alleges the court granted the pretrial motion to suppress those statements, and thus the prosecution was in violation of the pretrial order. However, the court specifically, and correctly, ruled that despite his not being given *Miranda* warnings prior to being asked his name, that Flora gave false names to the police was admissible evidence at trial. In *Lewis v. State*, 445 So. 2d 1387, 1388 (Miss. 1984), Lewis argued the testimony from police officers, that he had given a false name at the time of his arrest, was inadmissible because he had not been given a *Miranda* warning before being asked his name. This Court held that "*Miranda* does not preclude an arresting officer from asking the detained individual his name. . . ." *Id.* Thus, the trial judge correctly denied the Flora's motion to suppress the false names he gave the police.

¶33. Flora next asserts the trial court erred by allowing the prosecution to impeach him on cross-examination with a statement he made prior to being given a *Miranda* warning. Before Flora was arrested he was asked by the police about the blood on his clothing, and he told them it was from a nosebleed. This statement was ruled inadmissible as substantive evidence by the trial court at a pretrial hearing, and the prosecution did not mention it during the State's case-in-chief. However, outside the presence of the jury, the prosecution argued they had the right to use the nosebleed statement on cross-examination, to impeach some of

14

Flora's testimony from direct examination, and the trial court agreed to allow the prosecution its use for that limited purpose.

¶34. In *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971), the United States Supreme Court said that a criminal defendant's right to testify in his or her own defense "cannot be construed to include the right to commit perjury." The Supreme Court further held that "[h]ad inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment." *Id.* at 226. This Court recognized the holding in *Harris*, stating: "[t]he United States Supreme Court has held that the prosecution may use the statements of a defendant, inadmissible in the state's case-in-chief because of a defective *Miranda* warning or procedure, to impeach a defendant's testimony." *Booker v. State*, 326 So. 2d 791, 792 (Miss. 1976).

¶35. During the State's case-in-chief, investigator Charles Taylor testified that Flora had blood on his clothes when he was arrested, and the clothes were admitted as physical evidence. In his direct testimony, Flora never specifically identified the origin of the blood on his clothes but did talk extensively about the physical altercation with Spann. The trial judge reasoned that "it was implicit in the way [Flora] described the blood appearing on him following the tussle" that Flora said the blood came from the fight. This implied statement was inconsistent with what Flora told the police before he was arrested, and the trial judge properly allowed the prosecution to use it to impeach Flora's direct testimony.

15

¶36.   Under the holdings in ***Harris*** and ***Booker***, it was not an abuse of discretion for the trial judge to allow impeachment of Flora with his statement to police, even though he had not been given ***Miranda*** warnings prior to making the statement.  After this ruling, the prosecution asked Flora if he remembered when the police asked him where the blood on his clothes came from and what he told the police.  Flora admitted telling the police the blood was from a nosebleed.

### C. Denial of motion for mistrial due to improper and prejudicial cross-examination

¶37.   Flora next argues it was error for the trial court to overrule his motion for mistrial after the prosecution asked him on cross-examination if he had screamed "where's the money, where's the money?" when he entered Subrenda Levy's apartment on the night of the murder. The defense objected, claiming the State had no proof that Flora had asked this question. The prosecutor responded, saying "there are statements that have been taken by witnesses--" just before being cut off by another defense objection.  The trial judge properly excused the jury and discussed he matter outside their presence.

¶38.   Flora asserts this Court's holding in ***Flowers v. State***, 773 So. 2d 309 (Miss. 2000), should apply in this situation.  In ***Flowers***, the State questioned a defense witness about the witness purchasing a pair of shoes worn at the murder scene, and the witness denied buying the shoes for the defendant.  On rebuttal, the State offered no proof of a basis in fact for asking whether the witness had purchased the shoes for the defendant, and this Court held that it was plain error for the State to leave "an impression in the minds of the jurors that the

16

prosecutor actually had such facts in hand and that the insinuations through questioning contained some truth." *Id.* Flora's reliance on *Flowers* is misplaced, however, because it is clearly distinguishable. The testimony in *Flowers* involved key evidence that would help to place the defendant at the scene of the murders, while Flora's testimony pertained to a collateral matter. There was already evidence, including his own direct testimony, that Flora was at Levy's apartment when Ray Spann was shot. The question of "where's the money?" is not key to the ultimate issue in this case, which is whether Milton Flora was guilty of murder.

¶39. This Court has held that "[s]pecific instances of conduct under our rules of evidence may not be proved by extrinsic evidence for impeachment purposes; they may only be inquired about on cross-examination." *Pinson v. State*, 518 So. 2d 1220, 1223 (Miss. 1988); *see also Lewis v. State*, 580 So. 2d 1279, 1287 (Miss. 1991). This subject arose in *Ball v. Sloan*, 569 So. 2d 1177 (Miss. 1990), when the defendant sought to impeach the credibility of the plaintiff by asking her if it was true that she had altered a prescription given to her by a doctor. The plaintiff denied having done so, and in its case in chief, the defense called a pharmacist who testified that he refused to fill the prescription for the plaintiff. *Id.* at 1179. On appeal, this Court held it was error for the trial court to allow, for impeachment purposes, the extrinsic evidence of the pharmacist's testimony on the collateral matter of the plaintiff altering her prescription. *Id.* (Citing 608(b), M.R.E.). In the present case, however, Levy had given the police a written statement, of which the prosecution and the defense were both

aware, stating that Flora "pointed a gun at me, saying 'bitch, where is the money'" when he entered her apartment. The defense saying, in the presence of the jury, that "they have no proof" when objecting to the questioning on this matter was in bad faith, and the State had every right to question Flora as to whether he said "where's the money?" when he entered Subrenda Levy's apartment, and Flora had the right to admit or deny. When a lawyer seeks to impeach a witness in this risky manner, they must accept the answer given by the witness.

¶40. Flora denied the accusation, and that should have been the end of the matter. When the prosecutor improperly repeated the question several times, the defense objected, and the trial court properly sustained the objection. The attempted impeachment was proper. As to the comment by the prosecutor alluding to the existence of witness statements to corroborate the accusation, the trial judge had wide discretion to determine whether the comment was so prejudicial as to merit a mistrial. *Spann*, 771 So.2d at 890. There was no abuse of discretion in denying Flora's motion for mistrial based on this issue.

¶41. Flora also argues it was error for the trial court to allow the State to ask questions alluding to Flora's having kidnapped and beaten Levy, crimes for which Flora was not on trial. While this issue may have some merit, the defense never objected to the allegedly inflammatory and prejudicial questions, and did not move for a mistrial after this line of questioning.

¶42. If no contemporaneous objection is made at trial, a party must rely on the plain error rule to raise the assignment of error on appeal. *Foster v. State*, 639 So. 2d 1263, 1289 (Miss.

18

1994) (citing ***Gray v. State***, 487 So. 2d 1304, 1312 (Miss. 1986)). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." ***Williams v. State***, 794 So. 2d 18, 187 (Miss. 2001) (citing ***Gray v. State***, 549 So. 2d 1316, 1321 (Miss. 1989)). The plain error rule will only be applied when a defendant's substantive or fundamental rights are affected. ***Grubb v. State***, 584 So. 2d 786, 789 (Miss. 1991).

¶43. The questions asked by the prosecutor on cross-examination of Flora were questions about the events that took place on the night of the murder. Flora was able to answer all of the questions. It is the jury's job to weigh the credibility of Flora's testimony. ***Turner v. State***, 726 So. 2d 117, 125 (Miss. 1998). The trial court's ruling was not error.

**D. Flora's objections to prosecutor's remarks made in closing.**

¶44. Flora next argues it was error for the trial court to overrule his objections to improper and prejudicial comments made by the prosecutor on closing rebuttal. The prosecutor reminded the jury of all of the physical evidence against Flora and then said "if you acquit him, you will disregard every piece of physical evidence entered by the State ... and you will only believe Milton Flora." The prosecutor added "[t]hat's the only way you let him go." Flora objected, arguing that the jury should not be told that they "let him go."

¶45. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created. ***Sheppard v. State***, 777 So. 2d 659, 661

(Miss. 2000). Attorneys are allowed a wide latitude in arguing their cases to the jury. However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. *Id.*

¶46.   Flora argues that *Banks v. State*, 725 So. 2d 711 (Miss. 1997), should apply in this case. In *Banks*, this Court addressed a similar issue, where the prosecutor in closing arguments told the jury that if they set Banks free, that he would "walk out of [the] courthouse" was "the most frightening part." *Id*. at 718. This Court found that statement to be improper, stating it implied a possibility that Banks would commit crimes in the future if acquitted. *Id.* However, there were many other errors leading to a reversal in *Banks*, not the least of which was that there was virtually no evidence linking Banks to the crime. *Id.* at 713.

¶47.   This Court also addressed improper comments during closing arguments in *Dancer v. State*, 721 So. 2d 583, 589 (Miss. 1998), in which the prosecutor had warned jurors that if they acquitted Dancer, he would walk out of the courtroom and into their neighborhood. Although this statement was made to arouse fear in the jurors, an impermissible tactic, this Court held that, due to the overwhelming evidence against Dancer, the improper comment did not result in a decision made out of prejudice, and therefore, did not constitute reversible error. *Id.* at 590.

¶48.   The comment in the present case simply informed the jury that they were the ones who had the power to convict Flora or to acquit him. It in no way implied that Flora would

commit any crimes if acquitted. Unlike **Banks**, and much like **Dancer**, there was ample evidence against Flora to conclude the jury's decision was not improperly influenced by the prosecutor's comment.

¶49. Flora also complains of another comment made by the prosecutor during closing rebuttal. When discussing the jury instructions, the prosecutor said that a verdict of manslaughter would be a "cop-out" and that this was not a manslaughter case. Flora objected, stating that the comment is "accusing the court of getting them to compromise or cop-out." The trial judge overruled the objection and said, "[w]ell, that's her language, her argument. The jury has been instructed on following the jury instructions, and that what the lawyers say is not facts if it goes outside the record. So overruled. It's argument."

¶50. Flora also relies on **Sheppard**, in which this Court held it was improper for the prosecutor to tell the jury that "if the jury voted to acquit, he wanted them to call him and explain their rationale for finding the defense witnesses credible, so he could explain it to the victim's family." **Sheppard**, 777 So. 2d at 661. We held that "[t]he purpose of the remarks was to prejudice the defense, as well as to give the jurors the impression that if they did not convict, the prosecutor was going to subject them to personal ridicule, embarrassment and questioning." **Id.** at 662. In the present case, the prosecutor's statement that a verdict of manslaughter would be a "cop-out," while possibly riding the line between acceptability and unacceptability, in no way threatened the jury. The added safeguard of the trial court's admonition to the jury that they were to follow the instructions and that what the prosecutor

21

said that went outside the record was not fact, but "her language," was sufficient for us to hold that, at most, this was harmless error.

### E. Allowing presentation in rebuttal of evidence of physical injuries to Levy, an uncharged crime irrelevant to this trial

¶51. "The standard of review of an admission or exclusion of evidence is abuse of discretion." *Smith v. State*, 839 So. 2d 489, 496 (Miss. 2003) (citing *Stallworth v. State*, 797 So. 2d 905, 908 (Miss. 2001)). In this assignment of error, Flora contends the trial court erred by admitting into evidence a photograph of Levy, depicting her appearance on the night of Spann's murder. The trial court allowed the photograph for the limited purpose of impeaching Flora's credibility as to his testimony that Levy got into his car voluntarily that night and that he did not remember hitting her, especially with a gun.

¶52. Flora argues the holdings of this Court in *Flowers v. State*, 773 So. 2d 309 (Miss. 2000), *Flowers v. State*, 842 So. 2d 531 (Miss 2003), and *Stringer v. State*, 500 So. 2d 928 (Miss. 1986), should apply in this case. Although each of these cases involved multiple murders, the defendants were being tried separately for each victim. In each one of these trials, the prosecutors put in evidence of the murders of the other victims for which the defendants were not then on trial, and this Court held the admission of that evidence constituted reversible error.

¶53. The present case and those cited by Flora are clearly distinguishable. The evidence questioned by Flora is much less severe than that found to be improper in the *Flowers* and *Stringer*, in which the prosecution introduced pictures of and testimony about the bodies of

the other murder victims. The facts and photographs were particularly gruesome in *Stringer*, in which the trial court permitted the prosecutor to show the jury pictures of the second victim, a woman who was decapitated by a point-blank shotgun blast. The photograph challenged by Flora is black and white, and the photocopy contained in the record is not clear. It was admitted for a legitimate purpose, and does not rise to the level of gruesomeness or repetitiveness which requires denial of admission into evidence. The trial court did not err in allowing it on rebuttal.

## V.     DENIAL OF INTRODUCTION INTO EVIDENCE OF THE .380 HANDGUN

¶54.    Flora argues the trial court erred by prohibiting him from introducing into evidence a chrome .380 handgun that was discovered at the scene of Flora's arrest. Flora claims that Spann pulled out the chrome .380 handgun when he entered Levy's apartment, and argues that the exclusion of the gun deprived him of his right to present his theory of the case. Flora alleges that the murder weapon, the .32 pistol, was possessed by his cousin, Roger Johnson, on the night of Spann's murder.

¶55.    As stated supra, this Court applies an abuse of discretion standard to the admission or exclusion of evidence by a trial court. *Smith,* 839 So. 2d at 496. Flora argues that he should have been allowed to put the .380 handgun into evidence because his theory of the case was that he was in possession of the .380, and Roger Johnson had the .32. However, Flora's own testimony was that Spann had the chrome .380 when Flora and Johnson entered Levy's apartment, which clearly contradicts Flora's theory of the case. In addition, Flora

23

apparently wanted to tell the jury that Johnson was in possession of the murder weapon, leading the jury to believe that Johnson was the shooter. However, when the prosecutor asked on cross-examination: "Are you blaming your cousin for shooting Ray Spann?" Flora replied, "No Ma'am." To say the least, Flora's "theory" is confusing.

¶56. The trial judge ruled it was never shown that the chrome .380 had any relevance whatsoever in this case. There was never any evidence presented to the trial court that tied the .380 handgun to the murder scene. That it was found underneath Flora at the apartment of Sebrina Johnson does not make it relevant evidence when the murder occurred in another part of the city.

¶57. Flora finally renews his argument that the State opened the door for the admission of the .380 handgun. On direct examination of Investigator Taylor, the State asked him, "Why did you respond to the Lincoln Garden Apartments?" to which Taylor responded "I received a call from the police communications to respond to the apartments in reference to Precinct 3 officers recovering a car and possibly some handguns." Flora argued, outside the presence of the jury, that the use of the plural "handguns" opened the door for the admission of the .380. The State never asked any questions about multiple handguns found at the scene, and the trial judge correctly ruled that the reference to the "handguns" by Taylor was "very obscure and vague" and that "nothing specific" was said about multiple handguns. The trial judge did not abuse his discretion in denying the admission of the .380 handgun into evidence.

## VI. DENIAL OF MOTIONS TO DISMISS FOR VIOLATION OF RIGHT TO A SPEEDY TRIAL

¶58. The standard of review for a speedy trial claim focuses on the fact question of whether the trial delay arose from good cause. *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998). If substantial credible evidence exists from which a finding of good cause may fairly have been made, we will leave the finding undisturbed. *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991). Defendants in criminal cases are guaranteed the right to a speedy trial by the sixth and fourteenth amendments to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution of 1890. *Watts v. State*, 733 So.2d 214, 235 (Miss.1999). Flora alleges a violation of both his constitutional and statutory right to a speedy trial.

### A. The Constitutional Right

¶59. The Sixth Amendment to the United States Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The Sixth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV; *see Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

¶60. In 1972, the United States Supreme Court established a balancing test to determine whether a defendant has been deprived of his Sixth Amendment right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). The four factors to be considered are: (i) length of the delay, (ii) reason for the delay, (iii) defendant's assertion of his right, and (iv) prejudice to the defendant. In regard to these four factors, the

25

Court admonished that they "are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

¶61. This Court has adopted and applied these factors on several occasions. *Hersick v. State,* 904 So. 2d 116, 121 (Miss. 2004); *State v. Woodall*, 801 So. 2d 678, 680-81 (Miss. 2001); *Perry v. State*, 637 So. 2d 871, 874 (Miss. 1994); *Flores v. State*, 574 So. 2d 1314, 1321 (Miss. 1990). "No mathematical formula exists according to which the *Barker* weighing and balancing process must be performed." *Beavers v. State*, 498 So. 2d 788, 790 (Miss. 1986).

### 1. Length of Delay

¶62. The constitutional right to a speedy trial attaches at the time of arrest, indictment, or information, when a person has been accused. It is a "triggering mechanism" and unless there is delay which is presumptively prejudicial, there is no need for further inquiry under *Barker*. We recognize a delay of eight months to be presumptively prejudicial. *Hersick*, 904 So.2d at 121 (citing *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989)), Flora was arrested on September 11, 2001, was indicted on December 11, 2001, and waived arraignment on February 19, 2002. The trial began on December 1, 2003, far more than eight months later. Flora's constitutional right to a speedy trial attached on September 11, 2001, because it was at this time "actual restraints were imposed by the State against [Flora] through an arrest and institution of criminal charges." *Price v. State*, 898 So. 2d 641, 648 (Miss. 2005). Thus the delay of more than two years was presumptively prejudicial, and "the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the

26

legitimacy of these reasons." ***State v. Ferguson***, 576 So. 2d 1252, 1254 (Miss. 1991). This factor weighs in favor of Flora, and we must proceed to consider the other three factors.

### 2. Reason for Delay

¶63.  A total of 810 days elapsed from the date of Flora's arrest on September 11, 2001, to December 1, 2003, the date on which the trial began.  Several occurrences may justify a delay in a criminal case, one of these being "well-taken" motions for continuance.  In the case at bar, several motions for continuance were made:  some by agreement; some by the State, and some by Flora.  The record is difficult to follow regarding the number of motions for continuance, who filed the motions, when they were filed, and what period of time each covered.  The trial court's computerized court docket information shows only that this case was continued on April 11, 2002; May 22, 2002; August 1, 2002, August 17, 2002, and November 4, 2003, and states no facts about any of these[2]. Also shown within the docket information are Flora's motions to dismiss and demands for a speedy trial which are discussed infra.

¶64.  The first hearing on these motions was held by the trial court on January 24, 2003, and the transcript of that hearing provides the information for our speedy trial analysis.  First, defense counsel gave a brief overview of actions taken on Flora's behalf, without specificity beyond the months on which the motions for speedy trial and to dismiss were filed.  She

---

[2] The designation of the record is not an all inclusive one, and it does not make any specific reference to orders. While there are many orders found within the clerk's papers, none of them address the continuances.

27

pointed out that there are two cases involved, in two separate actions, one for capital murder and the present one for murder, and the arguments she makes are for both. She mentioned generally the court granting motions for continuances ore tenus to the prosecution, and that the prosecution and the court had ignored all requests for speedy trial. She concluded by asking the trial court to dismiss the case, release Flora on his own recognizance, or allow the trial to go forward on February 3, 2003. At that point, the prosecutor provided more specific information, including that when Flora waived arraignment in February 2002, the case was continued to the June 10, 2002, term of court. On March 7, 2002, and June 6, 2002, Flora requested more time for investigation and discovery, and trial was continued to the August term. On August 5, the defense requested another continuance, which was granted to September 23, 2002. On that date the State requested more time for a psychological evaluation of a then co-defendant. On November 20, 2002, Flora filed his first request for a speedy trial, although the trial date had already been set by the court for December 2, 2002. Ultimately that trial setting was continued until February 3, 2003, because the trial court judge had a scheduling conflict with another "special setting" case. At the January 16 docket setting, the trial court granted the prosecutor's motion for continuance, over Flora's objection that although the prosecutor announced ready for trial of other cases also scheduled on February 3, those defendants had not been incarcerated as long as Flora. The record is silent as to whether any date certain was set for the trial. At the January 24, 2003, hearing the trial court considered the arguments of counsel and reviewed the history of the case to that point.

28

Before announcing his ruling on the motions, without specifically addressing any particular motion, the trial court noted that Flora was facing "the most serious charges that could be leveled against any defendant. One is capital murder, the second is murder, and the third is armed robbery"[3], and went on to say:

> And obviously it takes time on the part of the defendant to prepare the case, the defendant's attorneys to prepare the case defending the defendant; and it takes also a lot of time for the State to get ready to prosecute the case. And so with that understanding, and in consideration of the nature of the charges, the seriousness of the charges, as well as the necessary continuances which were requested by the defendant to have an opportunity to get everything ready for the defense, and then for the State on that occasion that has been mentioned which related to the codefendant, and for these reasons the Court is of the opinion that there has been no denial of a speedy trial, no violation of the speedy trial requirements of the State. And so the case, you know, will, of course, proceed as soon as the Court can get to it.
>
> This Court has a tremendous volume of criminal cases, and we can only try so many cases in a period of time. But every effort will be made to try this case as soon as possible. . . . The Court is of the opinion that there is no factual basis or legal basis for supporting the defendant's demand for speedy trial, and the same for the motion to dismiss. . . . So the Court is going to deny each of these motions and each of these causes that have been raised by the defendant.

At that point the trial court asked if there was anything else to be considered, to which Flora's attorney answered "No, your honor."

¶65. On March 7, 2003, a second hearing was held, this time regarding the State's motion for continuance requested the previous day. The court granted the State's motion, which included need to secure DNA testing, weapons analysis, and the absence of a key witness,

---

[3]The appeal before this Court is from the murder charge only.

Subrena Levy. This motion was granted until the next term of court on a date to be assigned by the court administrator[4] and defense counsel acquiesced. On May 8, 2003, Flora filed his third demand for a speedy trial, and on May 15, the State requested more time in order to get blood samples tested in addition to needing more time to find a material witness to their case. On May 23, a third hearing was conducted, this time regarding the blood samples from Flora for testing, and the trial judge granted the blood testing. The transcript does not reveal that there was any specific accounting for the days of delay caused by the time necessary to get the samples and testing done. On June 13, the court ordered the same from witness Subrenda Levy. On September 12, 2003, Flora renewed his demand for a speedy trial, actually in a fourth case, in which Flora was charged with possession of a firearm by a convicted felon. However, that case was also set for trial September 22, and the hearing involved various matters on all four of the Flora cases, including severance. With regard to the present case, the prosecutors pointed out that they had been waiting more than six months for DNA results from Reliagene, which were needed specifically for the murder case, and that a date certain setting appeared to be necessary to get the testing completed. There was no ruling from the court at the close of the hearing, other than to instruct the attorneys to get with the court administrator to select a date, and trial was subsequently set for December 1, 2003. On October 17, 2003, defense counsel informed the court he was unavailable on that day, and requested a continuance, but it was denied. From then until the December 1, 2003, trial,

---

[4] Apparently the date set was for September 22, 2003, based on argument by the prosecutor at the May 23, 2003 hearing.

30

there were various motions for, and responses and supplements to, discovery from both Flora and the State. On October 20, Flora filed six motions in limine, and on the following day filed motions for funding for DNA expert to assist, and for additional discovery. In November there were more motions and numerous orders. Although on the record before us we are unable to allocate a specific number of days of delay to each party, we are persuaded that sufficient good cause was shown related to matters beyond the control of the State, for us to uphold the decision by the trial court.

¶66. We cannot say that the trial court abused its discretion in denying Flora's motions. We do, however, urge the trial courts and prosecutors of this State to guard against becoming complacent with regard to making a clear record to allow proper review of speedy trial claims. This Court should not be expected to simply accept at face value the claims of crowded dockets, backlogged laboratory testing, and other similar logistical problems, which undeniably exist. Under the facts and circumstances in the record before us, the reason for the delay factor weighs in favor of Flora.

### 3. Assertion of the Right

¶67. This factor weighs in favor of Flora. It is undisputed that Flora asserted his constitutional and statutory right to a speedy trial on several occasions beginning with his demand for speedy trial and first motion to dismiss, on November 20, 2002, some 14 months after his arrest. His second demand was made on January 17, 2003; and his third on May 8, 2003, together with his second motion to dismiss. However, Flora's assertion of his right

31

to a speedy trial is a ground for reversal or dismissal only if, after viewing together and evaluating all factors of the *Barker* analysis, we conclude that his right to a speedy trial was violated. *Stark v. State*, 911 So.2d 447, 453 (Miss. 2005).

### 4. Prejudice

¶68.     To assist in analyzing this factor, the *Barker* Court identified three interests protected by the right to a speedy trial to be considered when determining whether the defendant has been prejudiced by the delay in bringing him or her to trial. These interests are: (a) prevent oppressive pretrial incarceration, (b) minimize anxiety and concern of the accused, and (c) limit the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. *Id.* In *State v. Magnusen*, 646 So. 2d 1275, 1284 (Miss. 1994), this Court found presumptive prejudice from a fifteen-month delay between arrest and trial but no actual prejudice and weighed the prejudice factor against the defendant. We look to such questions as whether witnesses have died or become unavailable, documents or other evidence have been destroyed, or memories have dimmed so that the accused is at a disadvantage which would not have attended him at a prompt trial. *Jaco v. State*, 574 So. 2d 625, 632 (Miss. 1990); *see Perry v. State*, 419 So. 2d 194, 200 (Miss. 1982); *Wells v. State*, 288 So. 2d 860, 863 (Miss. 1974).

¶69.     While there are certainly societal disadvantages of a lengthy pretrial incarceration, this case does not present a situation in which the incarceration was oppressive, especially when

one considers the complexities of preparation for multiple charges filed against multiple defendants, in four separate cases, plus the heavy caseload in the offices of both the Hinds County Public Defender who represented Flora, and the Hinds County District Attorney who prosecuted the case, as well as the Hinds County Circuit Court. There were a number of continuances filed, or agreed to, by Flora. Furthermore, no proof exists of extraordinary anxiety or of loss of evidence or witnesses. Flora attempts to use "prosecutorial misconduct" in support of his speedy trial claim. This claim is without merit as we agree with the trial court's conclusion that the reasons given for the State's continuances were for "good cause." As to Flora's allegation that the prosecutor deliberately misrepresented the fact that the DNA testing was being done, the record reflects that, at that time, the state crime lab was without an analyst who could perform the DNA testing, and upon learning of this, the prosecutor promptly proceeded to take the steps necessary to obtain testing from Reliagene. This unquestionably caused delay, but the record does not reflect that the State's failure to obtain timely testing was done to purposefully disadvantage Flora, nor that Flora's ability to defend against the charges was affected. Ultimately, all witnesses were available for trial. This factor weighs in favor of the State, as no actual prejudice existed. Under the totality of the circumstances, and upon examination and analysis of the Barker factors, we conclude that Flora's constitutional right to a speedy trial was not violated. *See **Hersick***, 904 So.2d at 125.

### B. The Statutory Claim

¶70. Flora also alleges a statutory violation of his right to a speedy trial, under Miss. Code Ann. Section 99-17-1 (Supp. 2000), which provides: "[u]nless good cause be shown, . . . all

33

offenses for which indictments are presented to the court shall be tried no later than two hundred seventy days (270) after the accused has been arraigned." Therefore, we simply start Flora's statutory speedy trial clock two months later, on February 19, 2002, when he waived arraignment and entered his not guilty plea. However, the same analysis of good cause shown and continuances duly granted is applicable in the statutory context as in the constitutional context. After thoroughly reviewing the record, we are convinced that fewer than 270 days must be counted against the State. The only intervals where it appears that, arguably, a noteworthy amount of time ran against the State was between the waiver of arraignment and Flora's first continuance, which amounted to sixteen days; between the State's first motion for continuance on September 23, until December 2, 2002, the first date set for trial, which was seventy days; between the state's second motion for continuance on January 16, until the March 7, 2003 hearing on that and other motions, which was fifty days; and between March 7, until May 15, 2003, which was sixty-nine days, for a total of 205 days. Considering the record as a whole, we conclude that while the length of the delay was substantial, and while Flora undisputedly asserted both his statutory and constitutional right to a speedy trial, the reasons for the delay were legitimate and "good cause" was shown. In light of Mississippi's current case law on this point, we hold that Flora was not denied his statutory or constitutional right to a speedy trial. This issue is without merit

VII.    **DENIAL OF MOTION FOR DISCLOSURE OF THE NAMES OF THE ARRESTING OFFICERS AND DISCLOSURE OF THE CRIMINAL HISTORIES OF JOHNSON AND SPANN**

34

¶71. In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion. *Montgomery v. State*, 891 So. 2d 179, 181 (Miss. 2004).

¶72. Flora asserts the trial court denied to him the names and identities of the police officers who were present at his arrest in the early morning hours of September 11, 2001, and also denied him the criminal histories of Roger Johnson and Ray Spann. Flora submits only that this information may have been favorable and possibly could have supported the defense that Flora did not fire the murder weapon.

¶73. The law is well-settled on this disclosure issue. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court established the principle that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is either material to guilt or to punishment. However, the Supreme Court also recognized that not all failures to disclose exculpatory evidence constitute reversible error, holding that ". . . the question is whether there is a 'reasonable probability' that the verdict would have been different but for governmental evidentiary suppression which 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (citing *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). Soon thereafter, we adopted this principle and stated that in order to establish a *Brady* violation, a defendant must prove the following:

(1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a *reasonable probability* exists that the outcome of the proceedings would have been different.

*King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995) (emphasis added).

¶74. Flora argues the State suppressed favorable evidence; however, Flora fails to show, as required by ***Brady***, either that the evidence was favorable or that the prosecution even possessed the same. In fact, Flora acknowledged this through his motion for discovery that he asked the trial court to order the Jackson Police Department, the Hinds County Sheriff's Office, the Mississippi Department of Public Safety and the Mississippi Department of Corrections to provide him all the records indicating all criminal charges or convictions with regard to five persons who "*may* be material witnesses in this case and *may* be called to testify"(emphasis added). There is no proof in the record that would allow this Court to decide whether such evidence was favorable or unfavorable. Even if this Court presumes that the evidence was favorable and that the evidence was in the prosecution's possession, Flora still must satisfy the remaining prongs.

¶75. Under the second prong of ***Brady***, the defendant must prove that he "does not possess the evidence nor could he obtain it with any reasonable diligence." ***King***, 656 So. 2d at 1174. Presuming Flora did not possess the evidence, no proof exists in the record that Flora could not obtain the evidence with reasonable diligence. Flora argues that "state and federal law bar Flora from directly accessing the information via the public entities responsible for

36

maintaining national criminal information databases and access to these databases," but does not cite authority and does not provide any proof that he sought to obtain such information and it was denied. Further, this argument is in direct conflict with a recent decision by the Mississippi Court of Appeals which correctly stated that: "[c]onviction records are a matter of public record equally available to the defense as to the State." *McNair v. State*, 814 So. 2d 153, 157 (Miss. App. 2001). Moreover, while the names and addresses of the police officers were in the State's possession, Flora failed to demonstrate he could not obtain this information through reasonable diligence.

¶76. Even if Flora were to satisfy the first and second prongs, he fails to satisfy the third and fourth prongs of the *Brady* test. Under the third and fourth prongs of the test, the defendant is required to prove that the "prosecution suppressed the favorable evidence and that had the evidence been disclosed to the defense, a *reasonable probability* exists that the outcome of the proceedings would have been different." *King*, 656 So. 2d at 1174 (emphasis added). In 2001, this Court held that "in any case, *Brady* requires a 'reasonable probability' of a different outcome, not a mere possibility." *Todd v. State*, 806 So. 2d 1086, 1091 (Miss. 2001). Ultimately, Flora cannot prove to a reasonable probability that the outcome of the trial would have been different had this evidence been in his possession. Flora not only admitted to being at the scene of the crime, but he also admitted to being in a struggle with the victim. Evidence also exists which places the weapon used to commit the crime in Flora's possession soon after the crime. Furthermore, gunshot residue was found on Flora

37

soon after the crime, and blood of the victim was found on Flora's clothing. At best, a mere possibility exists that the outcome of trial would have been different, certainly not satisfying *Brady* or the standard required by this Court's precedent. *See id*. at 1091. Moreover, there is no evidence of suppression by the State. The trial judge did not abuse his discretion in refusing to allow Flora to discover potentially favorable evidence.

## VIII. DENIAL OF FLORA'S REQUEST TO QUESTION STEVEN HAYNE ABOUT ILLICIT DRUGS IN THE BLOOD OF THE VICTIM

¶77. The standard of review for the exclusion of evidence is abuse of discretion. *Herring v. Poirrier*, 797 So.2d 797, 804 (Miss. 2000). The trial judge is empowered with the discretion to consider and to decide which evidence is admissible, and unless this judicial discretion is so abused as to be prejudicial to the accused, then, the ruling of the lower court must be affirmed. *Clark v. State*, 891 So.2d 136,139 (Miss. 2004).

¶78. During direct examination by the State, Dr. Steven Hayne testified that he drew blood and urine specimens from the body of the victim for toxicological testing by the Mississippi Crime Laboratory, and that the testing would show the presence or absence of ethyl alcohol or "drugs of abuse" in the bloodstream. Dr. Hayne also testified on direct examination that the crime laboratory results showed an absence of ethyl alcohol. Dr. Hayne further testified that the crime laboratory result of the ethyl alcohol testing was the only report he received. On cross-examination, Flora attempted to ask whether the urine of the victim showed the presence of "drugs of abuse" to which the trial court sustained the State's objection to that question. Had Flora not possessed the results of both the ethyl alcohol and "drugs of abuse"

reports, his argument would certainly be stronger regarding a possible discovery violation. Flora was, however, in possession of both reports; counsel stated in a proffer outside the presence of a jury: "I've got the testing documents and the results on them which would be negative for all drugs other than marijuana in the urine -- of the blood of Mr. Spann [victim]." It is certainly not the State's duty to enter into evidence all documents in its possession, especially when the person testifying has no knowledge of the contents of an offered or proposed document.

¶79. Flora also argues that the State created a "false impression of the evidence" by only referring to the ethyl alcohol testing. This argument would have merit only if Dr. Hayne was aware of the "drugs of abuse" report of which he clearly denied having knowledge on several occasions. By asking Dr. Hayne about the only toxicological report of which he had knowledge, the State did not create a false impression of the evidence, and Flora cannot justifiably claim a due process violation.

¶80. The trial court did not abuse its discretion by denying Flora the opportunity to ask Dr. Hayne about the results of the "drugs of abuse" report.

### IX. DENIAL OF FLORA'S MOTIONS FOR DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND JUDGMENT NOTWITHSTANDING THE VERDICT

¶81. "[T]he standard of review for denials of a motion for directed verdict, judgment notwithstanding the verdict and a request for peremptory instruction is the same." *Jefferson v. State*, 818 So. 2d 1099, 1110 (Miss. 2002); *see also* *Shelton v. State*, 853 So. 2d 1171, 1186 (Miss. 2003). "A directed verdict, judgment notwithstanding the verdict and a request

39

for peremptory instruction all challenge the legal sufficiency of the evidence presented at trial." *Jefferson*, 818 So. 2d at 1099. This Court considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may be drawn from the evidence. *Seeling v. State*, 844 So. 2d 439, 443 (Miss. 2003). This Court is "not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt the defendant was guilty." *Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991).

¶82.    In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to

> ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in  the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge

40

to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004).

¶83.    The precise issue is whether, on the evidence before us, fair-minded jurors could have found Flora guilty of murder beyond a reasonable doubt.  Without question, there is ample evidence pointing to Flora's guilt.  Flora admitted to being at the scene of the crime,  and he admitted to being in a struggle with the victim.  Evidence also exists which places the weapon used to commit the crime in Flora's possession soon after the crime.  Gunshot residue was also found on Flora soon after the crime.  In addition, blood of the victim was found on Flora's clothing.  Flora's contention that the case relies entirely on circumstantial evidence is simply incorrect.

¶84.    Considering the evidence offered by the State, as set forth above, Flora's argument that the trial court erred in denying the motion for directed verdict, judgment notwithstanding the verdict and the request for peremptory instruction is without merit.  When observed in the light most favorable to the State, and with the State receiving the benefit of all favorable inferences, we conclude that the evidence presented was legally sufficient to support the conviction in this case.

## CONCLUSION

¶85.    We affirm the trial court on all issues.

¶86.   **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., AND CARLSON, J., CONCUR.  EASLEY, J., CONCURS IN RESULT ONLY.  DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.  DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, DISSENTING:**

¶87.   Because the majority has, in my view, improperly analyzed Flora's speedy trial issue, I respectfully dissent.  The majority correctly sets out the standard of review for a Sixth Amendment speedy trial claim which focuses on balancing four ***Barker*** factors.

¶88.   In ***Barker v. Wingo***, 407 U.S. 514, 92 S.Ct. 2182 (1972), the United States Supreme Court, in addressing an alleged Sixth Amendment speedy trial violation, set forth four factors to be considered and weighed by the courts.  The four factors "are related factors and must be considered together with such other circumstances as may be relevant." ***Id***. at 533.

*Length of delay*

¶89.   A court must first determine whether balancing the four factors is necessary.  This is easily done by calculating whether more than eight months elapsed between arrest and trial.  If so, then the first factor weighs in favor of the defendant.  In fact, this Court has held that a delay of more than eight months is presumed to be prejudicial.  The majority correctly assesses this factor in favor of Flora and against the State.  We then move to the second factor.

42

*Reason for the delay*

¶90.    In analyzing this factor, this Court requires the State to come forward and explain why the delay extended beyond eight months, and to show that either the delay was caused by the defendant, or was for good cause. ***Hersick v. State***, 904 So. 2d 116, 121 (Miss. 2004). In that regard, we have clearly held:

> The burden is on the State to provide the defendant with a speedy trial. Therefore, the State bears the concomitant burden of showing that either the delay was caused by the defendant or that the delay was for a good cause. Where the State is unable to do either, this factor must be weighed against the State.

***Id.***, *citing* ***Smith v. State***, 550 So. 2d 406, 409 (Miss. 1989); ***Wiley v. State***, 582 So. 2d 1008, 1012 (Miss. 1991). In addressing the several motions for continuance in the record, the majority says they are "difficult to follow," and they are "unable to allocate a specific number of days of delay to each party." This, of course, means the State has made little or no effort to meet its burden.

¶91.    This Court does not customarily perform tasks it has previously characterized as the State's burden. Where a party does not meet its burden, the party should lose the issue. In this case, the State does not even attempt to meet its burden. The State demonstrated nothing. The majority, taking upon itself the State's burden, painstakingly scoured the record for explanations for the delay. Finding no attempt by the State to explain the delay, and unable on its own to discover in the record reasons for the delay, the majority correctly concludes that the second Barker factor weighs in favor of Flora and against the State.

43

*Assertion of the right*

¶92.   The majority correctly concludes that the third factor, assertion of the right – weighs against the State, and in favor of the defendant.

*Prejudice to the defendant*

¶93.   The fourth **Barker** factor is prejudice to the defendant.  In addressing this fourth factor, the **Barker** Court stated:

> A forth factor is prejudice to the defendant.  Prejudice, of course, should be asserted in the light of the interests of defendants which the speedy trial right was designed to protect.  This Court has identified three such interests: (I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused, and (iii) to limit the possibility that the defense will be impaired. (footnote omitted).
>
> Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.  If witnesses die or disappear during a delay, the prejudice is obvious.  Ther3e is also prejudice if defense witnesses are unable to recall accurately events of the distant past.  Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
>
> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are eben more serious.  The time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness. . . . Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.  Imposing those consequences on anyone who has not yet been convicted is serious.

*Id*. at 532-33.

¶94.   With very little analysis, the majority finds – despite the fact that Flora was incarcerated the entire 810 days before his trial – that this factor weighs in favor of the State.

44

Indeed, the majority finds this factor so heavily weighs in favor of the State, that it outweighs all other factors combined. In doing so, the majority ignores the obvious prejudice associated with a lengthy pretrial incarceration, as discussed in **Barker**. I cannot agree with the majority's conclusion that two years of pretrial incarceration is so void of prejudice that it excused the State's complete failure to explain two years of delay.

## CONCLUSION

¶95. In conclusion, I first recognize that the United States Supreme Court requires that we analyze an alleged violation of the Sixth Amendment right to a speedy trial by applying and weighing four factors. The majority has done so, and concludes that three of the four factors weigh in favor of the defendant and against the State. That is to say, three of the four factors suggest Flora's constitutional right to a speedy trial were violated. Only the fourth factor – actual prejudice to the defendant – weighs in favor of the State. And despite the fact that Flora has remained incarcerated for the entire delay, the majority concludes that Flora is so incredibly unprejudiced, that this fourth factor serves to outweigh all three of the other factors. So be it. But I cannot agree with or join this analysis or application of the **Barker** factors.

¶96. It was not this Court nor any justice on it that decided the Unites States Constitution should guarantee a defendant a speedy trial. However, this Court and each justice on it is duty bound to reverse any conviction which occurred at a trial where this right was violated; whether we like it or not.

45

¶97. The State had eight months, or approximately 245 days, to bring Flora to trial. Flora was brought to trial after 810 days. This resulted in a delay (beyond the eight months) of 565 days. The State did not even attempt to meet its burden in this case by showing, or even offering, good cause for these 565 days of delay. The explanation is not to be found in the record, and it is conspicuously absent from the majority opinion. Under such circumstances, unless this Court diligently protects rights guaranteed under the Constitution, the State will have no incentive to be diligent.

¶98. In this case, with respect to this issue, I cannot in good conscience agree with the majority's approach to constitutional interpretation and application. Either our citizens have constitutional rights, or they do not. Here, the majority begins by recognizing that Flora has such rights. If that is so, however, they are certainly imperfectly protected today. The prospect that Flora, who may actually have committed the crime, could walk free because his constitutional rights were violated, is certainly disturbing on more than one level. But the protection of constitutional rights is an issue bigger than Milton Flora.

¶99. From what I recognize and know to be a very difficult albeit sincerely held conclusion reached by the majority, I respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**