750 So.2d 1280 (1999)
Fredrick CAMPBELL a/k/a Frederick Dywayne Campbell a/k/a `Fred', Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00065-COA.
Court of Appeals of Mississippi.
September 28, 1999.
H.W. `Sonny' Jones, Jr., Meridian, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
*1281 THOMAS, J., for the Court:
¶ 1. Fredrick Dywayne Campbell appeals his conviction of sale of cocaine, raising several issues as error. However, having made a detailed review of the record and the issues assigned, we conclude that error is found in Campbell's second assignment. Campbell's remaining issues are without merit or irrelevant in light of our remand for a new trial on the following assignment of error:

I. WHETHER ERROR IS FOUND IN THE ADMISSION OF OTHER ALLEGED CRIMINAL BEHAVIOR NOT RESULTING IN A CONVICTION AND NOT RELATED TO THE PRESENT CRIME.
¶ 2. Finding error, we reverse and remand.

FACTS
¶ 3. On September 18, 1996, officers of the Meridian/Lauderdale County Drug Task Force met in Meridian for purposes of conducting an undercover drug buy in the North Hills Manor Apartments. Acting on information supplied by Levon Bohannan, a confidential informant, regarding the sale of narcotics in the North Hills apartments, the task force officers focused their operation on Frederick Campbell. Agent Darryl Theall, the case agent, provided Bohannan and Joshua Coleman, an undercover police officer, with $100 of marked "buy money" and equipped them with a body wire for radio surveillance. Coleman and Bohannan then set out for the North Hills Apartments to locate and purchase drugs from Campbell. Campbell was asked if he had any crack cocaine, to which Campbell responded that he had one bag left. Campbell went upstairs to apartment F-2 and returned a short time later with a small clear bag containing what later tested positive as crack cocaine. Officer Coleman then gave Campbell the $100 of "buy money" in exchange for the crack cocaine. Campbell also provided Coleman with his pager number. Officer Coleman and Bohannan then returned to the task force office and turned over the drugs to Case Agent Theall. Officer Coleman identified Campbell as the individual who had sold him drugs from an enlarged photo of Campbell's driver's license.

ANALYSIS

I.

WHETHER ERROR IS FOUND IN THE ADMISSION OF OTHER ALLEGED CRIMINAL BEHAVIOR NOT RESULTING IN A CONVICTION AND NOT RELATED TO THE PRESENT CRIME.
¶ 4. Campbell argues that improper testimony of a separate pending criminal charge was repeatedly elicited from several witnesses throughout the course of the trial despite numerous objections from defense counsel. We note that not all instances were objected to by defense counsel. Those that were timely objected to were sustained with instructions given to the jury to disregard the testimony at issue. However, Campbell argues that the cumulative nature of the elicited testimony on the separate criminal charge amounted to an irreversible prejudice to which the effect on the jury could not be corrected despite the numerous instructions to disregard the same.
¶ 5. A detailed review of the record reveals trial proceedings replete with instances where testimony concerning separate criminal activity was improperly laid before the jury. Beginning with the testimony of the State's first witness, Agent Theall, we note three separate instances where Agent Theall interjected testimony of inadmissible evidence on separate criminal charges pending against Campbell. The first occurred during Agent Theall's direct examination in the State's case-in-chief:
Q. Who was the target of the operation when you left the prebuy meeting?
A. Frederick Campbell.
Q. Okay. Who had given you the name Frederick Campbell?

*1282 BY MR. JONES: Object to that. It calls for hearsay evidence.
BY MRS. HOWELL: No, sir, it's not hearsay.
BY THE COURT: Overruled.
A. On this particular buy, we already made one buy from the subject
BY MR. JONES: Your, Honor, I object to this as evidence that is notit certainly should not have been brought into evidence.
BY THE COURT: Sustained.
¶ 6. The second instance occurred during Agent Theall's cross-examination when he responded to defense counsel's question concerning the location of an original photo of Campbell. When asked if Agent Theall could produce the original photo, Agent Theall responded it was in another case file.
Q. Would you get that for me, then?
A. It's in the other case file.
Q. Where is the other case file?
A. The other charge we have.
BY MR. HOWELL: Your Honor, we already got that before them.
Q. Now, just where is it physically located?
A. I don't have it with me, I am not sure.
¶ 7. During Agent Theall's redirect examination, the State sought to further expound the issue of why Campbell had been targeted for the sale of cocaine.
Q. Mr. Jones used the word "target" several times in his cross-examination, that y'all had targeted Frederick Campbell. Why was Frederick Campbell being targeted?
A. We had complaints and had one other purchase, one other sale.
BY MR. JONES: Your Honor, I am going to object to this and ask for aI would like to make a motion outside the presence of the jury.
BY THE COURT: All right. I will give you that opportunity in just a minute.
¶ 8. Agent Theall was thereafter excused and defense counsel moved for a mistrial based on the State's continued questioning of Agent Theall in a manner as to elicit testimony concerning separate criminal charges pending against Campbell. That motion was denied. The trial court did, however, instruct the jury to totally disregard any reference to any other criminal charges that may be pending against Campbell.
¶ 9. Campbell's separate criminal charges were again elicited in the State's case-in-chief during the testimony of Officer Coleman. Officer Coleman was questioned on how he came to identify Campbell as the individual from whom he had purchased the cocaine.
Q. Okay. You said that later that same day that you identified the defendant, Frederick Campbell. Was that by name?
A. By name, also by a photo picture.
Q. Okay. Well, tell the jury, if you will, how that came about that you identified him.
A. Well, I was there. I had already met him prior, a buy from this
BY MR. MALTA: Objection.
BY MR. JONES: Your Honor
BY MR. MALTA: That's not responsive, Your Honor.
BY MR. JONES: I request that the jury be instructed to disregard that testimony and ask the district attorney's office to be instructed to instruct their witnesses not to inadvertently make those statements that they are apparently determined to do.
BY THE COURT: Well, he didn't the witness was not responsive to the question. But I will ask the jury to totally disregard that last answer.
¶ 10. Again the trial court instructed the jury to totally disregard any reference concerning any other criminal charges that may be pending against Campbell. We note, as evidenced in the record, that there were numerous instances where witnesses gave non-responsive answers and interjected inadmissible testimony concerning other *1283 criminal charges pending against Campbell. We further note that while not every instance was challenged with objection, the matter of the inadmissible testimonies was sufficiently challenged a number of times and sustained each of those times with instructions to the jury to disregard when requested.
¶ 11. We have on numerous occasions reiterated our well settled axiom that prosecutions are limited to the particular offense as charged in the indictment. The interjection of evidence tending to show guilt of another crime, unrelated to the offense charged, is inadmissible. Tucker v. State, 403 So.2d 1274, 1275 (Miss.1981); Killingsworth v. State, 374 So.2d 221, 223 (Miss.1979); Sumrall v. State, 272 So.2d 917, 919 (Miss.1973); Sumrall v. State, 257 So.2d 853, 854 (Miss.1972). The Sumrall case appeared before the Mississippi Supreme Court on two separate occasions. In the first instance, the case was reversed and remanded for a new trial, wherein the court stated the general rule as follows:
It is a well-settled general rule that the issue on a criminal trial should be single and that the testimony should be confined to that issue and on the trial for one offense the prosecution should not be allowed to aid the proof against the defendant by showing he committed other offenses, even though of a like nature. Cummings v. State, 219 So.2d 673 (Miss. 1969); Ladnier v. State, 254 Miss. 469, 182 So.2d 389 (1966); Brown v. State, 224 Miss. 498, 80 So.2d 761 (1955); Pegram v. State, 223 Miss. 294, 78 So.2d 153 (1955); Floyd v. State, 166 Miss. 15, 148 So. 226 (1933).
Sumrall, 257 So.2d at 854.
¶ 12. The case was again appealed to the supreme court after similar errors, as were addressed in the first decision, surfaced in the second trial. At the second trial, the State repeatedly elicited testimony concerning prior criminal activity unrelated to the offense at issue. Timely objections were made and sustained together with instructions to the jury to disregard. In reversing the second time around the Mississippi Supreme Court said:
Careful consideration has forced us to conclude, on the basis of the entire record, that the repeated interjection of prejudicial matter, tending to show Sumrall guilty of other crimes and immorality, destroyed the possibility of a fair trial upon the charge in the indictment, and that this is true notwithstanding the Court's admonitions.
Sumrall, 272 So.2d at 919.
¶ 13. In regard to the trial court's admonishing the jury to disregard any reference to testimony or evidence of other criminal charges, we recognize the existence of an abundance of case law that presumes that members of the jury follow the instructions of the court. Payne v. State, 462 So.2d 902, 904 (Miss.1984). See also Whitlock v. State, 419 So.2d 200 (Miss. 1982); Evans v. State, 422 So.2d 737 (Miss. 1982); Edwards v. State, 413 So.2d 1007 (Miss.1982); Holifield v. State, 275 So.2d 851 (Miss.1973). However, in the present case we are faced with numerous instances where inadmissible and prejudicial testimony was laid before the jury, whether inadvertently elicited through the State's questioning or through nonresponsive witness testimony. Therefore, due to the repeated interjection of prejudicial matter, tending to establish additional crimes unrelated to his present offense, we conclude that Campbell was denied a fair trial.
¶ 14. It should be quickly noted that many of the errors which occurred at trial were unnecessary and could or should have been easily prevented through the State instructing its witnesses to refrain from interjecting any extemporaneous matters, in this case the still pending and unrelated criminal charges yet to be adjudicated. We presume that seasoned law enforcement officers should know to refrain from giving such testimony. Likewise prudence requires the cautioning of inexperienced officers by the prosecutor to likewise avoid the same. We do commend vigorous prosecution and zeal by the district *1284 attorney in convicting those whom he believes guilty. However, our duties require us to assure that every person is afforded and receives a fair trial free of prejudice.
¶ 15. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, LEE, MOORE, AND PAYNE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.