ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. A jury sitting before the Washington County Circuit Court found Stevenson Ford guilty of murder. Ford was sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Ford appeals pro se and raises fourteen issues. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Ford’s conviction was set into motion by events that occurred in Greenville, Mississippi, during the early morning hours of September 7, 2008. Ford and several of his friends had been at a nightclub called Southern Whispers, where some of his friends were involved in an altercation with Marvin Stuckett and some of Stuckett’s friends.
 

 ¶ 3. The jury’s verdict supports the following version of events. After they left Southern Whispers, Ford and two others were riding in Jessie Lee’s car. Lee was following Freddie Harris. Ford’s cousin, Daner Ford, was riding with Harris. Ford and his friends originally intended to go to an “after-hours” nightclub. When Harris made an unexpected u-turn, Ford told Lee to follow Harris. Lee complied.
 

 ¶ 4. Lee followed Harris to Stockton Drive, where Ford told Lee to pull over near Stuckett’s house. Again, Lee complied. Daner had gotten out of Harris’s car, which was parked on the opposite end of the 200 block of Stockton Drive. Armed with a rifle, Daner was walking toward Lee’s car. Ford and two friends, Ken Johnson and Jonathan Robinson, all got out of Lee’s car. Lee remained inside his car. According to Lee, he then heard multiple gunshots. Lee saw Ford firing a pistol.
 

 ¶ 5. After the gunshots had ceased, Ford, Robinson, and Johnson all got back into Lee’s car. Daner also got into Lee’s car. According to Lee, Daner was upset. Daner’s head was bleeding because he had been grazed by a gunshot. Lee later testified that Daner told Ford that Ford had nearly killed him.
 

 ¶ 6. Meanwhile, Stuckett’s friend, Chris York, was on his way to Stuckett’s house. York saw Harris’s car and Lee’s car leaving Stockton Drive. York was able to see Ford, Daner, and Lee in Lee’s blue Chevrolet Caprice. He believed that there might have been other people in Lee’s car, but he was not able to distinguish who else was with Lee. York continued to Stuckett’s house. When he arrived, he found Stuck-ett’s car, but he was not able to find Stuckett.
 

 
 *792
 
 ¶ 7. Within a short amount of time, Stuckett was found lying under his neighbor’s carport. Stuckett was alive, but he had been shot twice. One of the bullets injured Stuckett’s vocal cords, so he was not able to speak. Although he was rushed to Delta Regional Medical Center (DRMC), Stuckett was not able to survive.
 

 ¶8. Officers with the Greenville Police Department found spent cartridges and unfired ammunition outside Stuckett’s house. Some were fired from a rifle that fired 7.62 x 39 mm ammunition. Others were fired from a 9-mm pistol. However, Dr. Thomas Deering’s autopsy indicated that the fatal bullet was fired from a .38-caliber pistol. Detective Erica Brown’s investigation led authorities to Ford, Dan-er, Robinson, Harris, and Lee. They were all indicted and charged with murdering Stuckett, but Ford was tried separately.
 

 ¶ 9. On November 16, 2009, Ford went to trial. Ford presented a defense based on his alibi that he was not with any of the co-defendants when Stuckett was killed. According to Ford’s witnesses, Latasha Ford and Dave Smith, he could not have shot Stuckett because, except for a seven-minute period, Ford was with one of them during the night that Stuckett was murdered. For brevity’s sake, specific events that occurred during Ford’s trial will be discussed in greater detail as necessary in the analysis portion of this opinion. As previously mentioned, the jury found Ford guilty of murder. Aggrieved, Ford appeals.
 

 ANALYSIS
 

 I. JURY INSTRUCTIONS
 

 A. ACCOMPLICE INSTRUCTION
 

 ¶ 10. Ford claims the circuit court should have granted a cautionary instruction “in regards to the testimony of the witnesses who had been charged with an offense or the same offense.” We interpret Ford to mean that the circuit court should have granted an accomplice instruction regarding Lee’s testimony. According to Ford, “[s]uch instruction was refused by the trial court.” Ford does not specify which instruction he has in mind, but it is of no moment because Ford is mistaken.
 

 ¶ 11. The circuit actually granted Ford’s request for a cautionary accomplice instruction. Specifically, the circuit court granted instruction D-16, which states:
 

 In this case the State called as one of its witnesses, Jessie Lee, an alleged accomplice. The Court instructs the [j]ury that the law looks with suspicion and distrust on the testimony of an alleged accomplice. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict a[d]efendant upon the unsupported testimony of an alleged accomplice unless you believe that testimony beyond a reasonable doubt.
 

 A trial court has considerable discretion regarding the form and substance of jury instructions.
 
 Fulgham v. State,
 
 46 So.3d 315, 323 (¶ 17) (Miss.2010). As we review Ford’s claim, we must read the instructions as a whole.
 
 Id.
 
 To demonstrate that the circuit court abused its discretion in refusing to grant an instruction, an appellant must show that the instruction he requested was (1) a correct statement of the law, (2) not substantially covered by other instructions, and (3) so important that the circuit court’s failure to instruct the jury on that issue seriously impaired the appellant’s ability to present his defense.
 
 Id.
 

 ¶ 12. Because the circuit court granted an accomplice instruction, we find no merit to Ford’s claim that the circuit
 
 *793
 
 court should have granted another unspecified accomplice instruction. A circuit court may refuse an instruction that is covered fairly elsewhere in the granted instructions.
 
 Poole v. State,
 
 826 So.2d 1222, 1230 (¶27) (Miss.2002). Ford was not entitled to cumulative instructions. Therefore, we find no merit to Ford’s claim under this heading.
 

 B. PROFFERED INSTRUCTION D-4
 

 ¶ 18. Next, Ford claims the circuit court erred when it refused his proffered jury instruction designated as instruction D-4. Proffered instruction D-4 states:
 

 The Court instructs the jury that the accused ... is presumed to be wholly innocent of the whole crime charged. He is not required to prove himself innocent or put any evidence in at all upon the subject. In considering testimony in the case, you must look at the testimony and view it in light of the presumption which the law clothes the accused with, that he is wholly innocent, and it is the presumption that abides with him throughout the trial of [the] case until the evidence convinces you to the contrary beyond a reasonable doubt.
 

 Although the circuit court refused proffered instruction D-4, the circuit court instructed the jury according to instruction CCR-8, which states:
 

 The mere fact that a person has been charged with a crime and has been indicted by a grand jury is no indication whatever that he is guilty of the crime. In fact, the law presumes [that] every person charged with the commission of a crime to be innocent at the outset of the trial. This presumption of innocen[c]e stays with the [defendant and prevails unless, and until, it is overcome by evidence which satisfies you of the [defendant's guilt beyond a reasonable doubt. The burden of proving the [d]efendant guilty of every material element of the crime is upon the State of Mississippi. Before you can return a verdict of guilty, the State must prove to your satisfaction beyond a reasonable doubt that the [defendant is guilty. The defendant is not required to prove his innocence.
 

 As stated previously, a criminal defendant is not entitled to an instruction that is covered elsewhere by another instruction.
 
 Poole,
 
 826 So.2d at 1230 (¶ 27). Instruction CCR-8 is substantially the same as proffered instruction D-4. Accordingly, the circuit court acted within its discretion when it denied proffered instruction D-4. As with Ford’s first argument under this heading, we find no merit to Ford’s second argument.
 

 II. INDICTMENT
 

 ¶ 14. In this issue, Ford claims that the indictment against him is illegal. Ford’s reasoning is based on the fact that Count I of the indictment included a murder charge and a charge that Ford qualified for enhanced sentencing because he used or displayed a firearm during the commission of the murder. To be precise, the indictment against Ford states:
 

 That STEVENSON FORD ... on or about the 7th day of September, 2008, in Washington County, did unlawfully, willfully, feloniously, and of their malice aforethought, then and there kill and murder, one Marvin Stuckett, a human being; and,
 

 That the said STEVENSON FORD ... did willfully, unlawfully!,] and feloniously use or display a firearm at the time of the commission of the offense of [m]ur-der, in violation of Section 97-37-37(1) of the Mississippi Code of 1972, as annotated and amended[.]
 

 According to Ford, the indictment was illegal because it contained two charges with
 
 *794
 
 in the same count. In other words, Ford argues that he was not properly charged under Mississippi Code Annotated section 99-7-2 (Rev.2007) in that “count one actually contains two counts.”
 

 ¶ 15. Ford is correct that “[w]here two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.” Miss.Code Ann. § 99-7-2(2). Ford’s misunderstanding is based on the difference between a charge versus a sentence enhancement. Mississippi Code Annotated section 97-37-87(1) (Supp.2010) provides:
 

 Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.
 

 Section 97-37-37(1) “is clearly a sentence enhancement and does not set out separate elements of the underlying felony.”
 
 Mayers v. State,
 
 42 So.3d 33, 45 (¶ 50) (Miss.Ct.App.2010). Stated differently, by claiming that Ford qualified for enhanced sentencing as set forth in section 97-37-37(1), the prosecution did not seek to prove that Ford was guilty of a separate offense. The enhancement charge was not a charge of a separate crime. Instead, the prosecution sought to increase the penalty that Ford faced in the event that he was found guilty of murder. Accordingly, the indictment is not illegal. There is no merit to this issue.
 

 III. INCONSISTENT VERDICTS
 

 ¶ 16. Ford’s argument under this heading is based on the same fundamental misunderstanding of the nature of the charges in the indictment as discussed in the previous issue. Here, Ford argues that the jury must have been confused, because it found him guilty of murder, but it found that he did not qualify for enhanced sentencing pursuant to section 97-37-37(1). According to Ford, because the jury did not find that he qualified for enhanced sentencing pursuant to section 97-37-37(1), the jury was obligated to find him not guilty of murder.
 

 ¶ 17. However, Ford is procedurally barred from arguing this issue because he did not cite any relevant legal authority.
 
 Walker v. State,
 
 913 So.2d 198, 222 (¶ 73) (Miss.2005). Pro se litigants are afforded some leniency, but they must be held to the same substantial standards of litigation conduct as members of the bar.
 
 Sumrell v. State,
 
 972 So.2d 572, 574 (¶ 6) (Miss.2008). This includes the obligation to support his argument on appeal with citation to relevant legal authority.
 
 See
 
 M.R.A.P. 28(a)(6). Furthermore, Ford failed to raise this issue at trial. It is, therefore, procedurally barred on appeal.
 
 Walker,
 
 913 So.2d at 217 (¶ 49).
 

 IV. RIGHT TO DECLINE TO TESTIFY
 

 ¶ 18. Ford claims the circuit court failed to inform him properly of his right to decline to testify. Aside from that blanket statement and a brief recitation of the general law on the subject, Ford also states that he “should have been fully appraised of his right to not testify by the trial court before he was permitted to take the witness stand.”
 

 ¶ 19. However, the record reflects that Ford was informed of his right to choose not to testify during the following exchange:
 

 
 *795
 
 [DEFENSE COUNSEL]: Steve, you and I have talked about your right to testify and your right not to testify?
 

 [FORD]: Yes.
 

 Q: And you understand the ramifications, and I told you if you do testify— and I’ve kind of given you an idea of what the State is going to probably do or try to do. Do you understand all of that?
 

 A: Yes.
 

 Q: And you understand that you have the right not to testify?
 

 A: Yes.
 

 Q: And you understand that if you decided not to testify that I would ask [the circuit judge] to instruct the jury, as she’s already said, that that could not be used against you. You understand that?
 

 A: Yes, sir.
 

 Q: All right. But if you do testify, then it becomes a credibility question between what you say and what these witnesses say. You put yourself before the jury for them to decide if you’re telling the truth or not. Do you understand?
 

 A: Yes, sir.
 

 Q: All right. And having gone through that with you, is it your decision to testify or not testify?
 

 A: Yeah, I’ll testify.
 

 Q: You want to testify?
 

 A: Yes.
 

 THE COURT: All right. I don’t believe there is anything further that I need to add to that. He has explained that that’s your right and that the jury should not hold it against you if you do not, and he’s explained to you practically — when I say practically, I mean the way it happens. With Attorney Lee being a trial attorney in this district, what his assessment of the way jurors perceive the fact that you do testify or not testify.
 

 FORD: Yes, ma’am.
 

 THE COURT: Do you have any questions of the court?
 

 FORD: No ma’am.
 

 ¶ 20. In
 
 Culberson v. State,
 
 412 So.2d 1184, 1186-87 (Miss.1982), the Mississippi Supreme Court stated as follows:
 

 We suggest to the trial judges of the state that, in any case where a defendant does not testify, before the case is submitted to the jury, the defendant should be called before the court out of the presence of the jury, and advised of his right to testify. If the defendant states he does not wish to testify, he may not be forced to take the stand; however, if he states that he wants to testify he should be permitted to do so. A record should be made of this so that no question about defendant’s waiver of his right to testify should ever arise in the future.
 

 Ford was informed of his right to choose whether he wanted to testify. Ford was also informed that, if he opted to forego testifying, the jury would have been instructed that it must, not hold his silence against him. Fully informed of his rights, Ford chose to testify. We find no merit to this issue.
 

 V. STUCKETT’S CRIMINAL RECORD
 

 ¶ 21. Ford claims the circuit court erred when it refused to allow him to introduce Stuckett’s criminal record. However, the record does not indicate that Ford ever attempted to have Stuckett’s criminal record introduced into evidence. Because the circuit court did not have the opportunity to consider this issue, it is proeedurally barred.
 
 Latiker v. State,
 
 918 So.2d 68, 75 (¶ 17) (Miss.2005).
 

 
 *796
 
 VI. CHANGE OF VENUE
 

 ¶ 22. Next, Ford claims the circuit court should have changed the venue. Ford reasons that a change of venue was warranted because “the Chief of Police ... was actually the grand father [sic] of the deceased.” Ford raises this issue for the first time on appeal. Consequently, this issue is procedurally barred.
 
 Latiker,
 
 918 So.2d at 75 (¶ 17).
 

 VII. RECUSAL
 

 ¶ 23. Under this heading, Ford argues that the circuit judge should have recused herself because she was a friend of Stuckett’s grandfather. The record contains no indication that the circuit judge was a friend of Stuckett’s grandfather. What is more, Ford never moved for recu-sal. Therefore, this issue is procedurally barred.
 
 Latiker,
 
 918 So.2d at 75 (¶ 17).
 

 VIII. SUFFICIENCY OF THE EVIDENCE
 

 ¶ 24. Ford argues that the jury’s verdict was not supported by sufficient evidence. According to Ford, the prosecution failed to prove that he killed Stuckett. Ford reasons that the circuit court erred when it denied his motion for a judgment notwithstanding the verdict (JNOV).
 

 ¶ 25. “A motion for a [JNOV] ⅛ a challenge to the sufficiency of the evidence.”
 
 Gilbert v. State,
 
 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As our Mississippi Supreme Court has stated:
 

 in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for [a] directed verdict or for [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render.
 

 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.”
 
 Id.
 
 (internal citations and quotations omitted).
 

 ¶ 26. Ford was charged with murdering Stuckett while acting in concert with four other co-defendants. Ford claims the circuit court should have granted his motion for a JNOV because the prosecution “failed to prove that [he] actually killed Stuckett.” “Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such.” Miss.Code Ann. § 97-1-3 (Rev.2007). “One who is an accessory[-]before[-]the[-]fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony.”
 
 Scarborough v. State,
 
 956 So.2d 382, 386
 
 *797
 
 (¶ 21) (Miss.Ct.App.2007) (quoting
 
 Malone v. State,
 
 486 So.2d 360, 364 (Miss.1986)). To be held criminally liable as an aider and abetter in the commission of a felony, one must incite, encourage, or assist the actual perpetrator in the commission of the crime.
 
 Id.
 

 ¶ 27. Viewed in the evidence most favorable to the prosecution, there was evidence presented that Ford ordered Lee to follow Harris’s car when Harris made a u-turn and began driving toward Stuckett’s house. Lee testified that Ford further ordered him to pull his car over near Stuckett’s house. According to Lee’s testimony, Ford got out of Lee’s car after they saw Daner walking toward them with a rifle. Lee testified that he personally saw Ford firing a pistol. Dr. Deering’s autopsy indicated that Stuckett had been killed by a .38-caliber bullet. Starks Hathcock testified that .38-caliber bullets are “most commonly” fired from a revolver. To summarize, there was evidence that Ford ordered Lee to follow Harris. There was evidence that Ford ordered Lee to stop outside Stuckett’s house. There was evidence that Ford got out of Lee’s car and fired a pistol. And there was evidence that Stuckett was killed by a bullet that was fired from a pistol. Accordingly, we find that reasonable, fair-minded jurors could have found Ford guilty. It follows that we find no merit to this issue.
 

 IX. CONTINUANCE
 

 ¶28. Ford filed a motion for a continuance on November 3, 2009. Within that motion, Ford stated that he needed additional time because the prosecution planned to have Lee testify, and Lee was in the process of being extradited from Texas. On November 12, 2009, Ford filed an amended motion for a continuance. Ford noted that his trial was scheduled for November 16, 2009, and Lee had been extradited, but Lee had refused to talk to Ford’s attorney prior to trial. The record does not indicate that the circuit court heard Ford’s motion for a continuance. Likewise, the record does not indicate that the circuit court ruled on Ford’s motion.
 

 ¶29. Ford contends that the circuit court should have granted his motion for a continuance to give Ford’s attorney time to prepare for Lee’s testimony. Ford concedes that his attorney was aware that Lee would testify for the prosecution. To be precise, Ford states: “While the defense expected that Lee would testify as a witness for the [S]tate[,] there was never any confirmation of that fact until Lee was returned to the State of Mississippi [ten days prior to trial].” According to Ford, his attorney needed additional time “to prepare his defense of Lee’s possible testimony since Lee had been formally charged with being the shooter of Stuckett until the prosecution offered Lee a deal.”
 

 ¶ 30. As previously mentioned, the record does not indicate that the circuit court heard or ruled upon Ford’s motion for a continuance. “It is the duty of the mov-ant, when a motion or other pleading is filed ... to pursue [that] motion to hearing and decision by the court.” URCCC 2.04. Stated differently, Ford bore the burden of pursuing the relief he requested.
 
 Runnels v. State,
 
 919 So.2d 1072, 1074 (¶8) (Miss.Ct.App.2005). “No action was taken by the trial court[;] thus[,] there is no ruling from which [Ford] may appeal to this Court. Therefore, we conclude our review of this issue by simply resolving it adversely to him.”
 
 Id.
 
 (citation and quotation omitted).
 

 X. VOIR DIRE
 

 ¶ 31. Ford claims that, during voir dire, the prosecution presented facts of the case that should not have been
 
 *798
 
 presented. Ford takes issue with remarks made during the following colloquy:
 

 [THE PROSECUTION]: All right. In this case, I intend for you all to hear the testimony of a one Jessie Lee. You all heard the indictment read. Jessie Lee was listed in the indictment. I intend for you all to hear during the course of this trial that Jessie Lee was the driver of one of the vehicles occupied by the defendant and those cohorts that were with him. Now, is there anyone here who because of the fact that a co-defendant is testifying against this defendant automatically decides the case one way or the other without considering the evidence? Anyone?
 

 A: (No response).
 

 [THE PROSECUTION]: When co-defendants testify, I think that people, even from watching tv, we kind of get the idea that, well, there was some deal struck that he testified.
 

 [DEFENSE COUNSEL]: Your Hon- or, can we approach?
 

 (CONFERENCE AT THE BENCH BETWEEN THE COURT AND COUNSEL WITHOUT THE HEARING OF THE JURY)
 

 [DEFENSE COUNSEL]: It sounds an awful lot like we’re getting into some kind of opening statement or closing argument. I mean, if we’re going to argue this, then I’m going to argue a lot of stuff about Jessie Lee in voir dire. I think we’re going a little bit far.
 

 [THE PROSECUTION]: I don’t think that I’m going too far at all. I’m asking if the fact that the co-defendant is testifying makes them automatically decide one way or the other.
 

 [DEFENSE COUNSEL]: It’s fine to ask that. I don’t object to that, but you’re going into all of these details about who’s driving the car and all of this. I think that’s going too far.
 

 THE COURT: I think we should just go straight to the question that he’s a co-defendant.
 

 [THE PROSECUTION]: Yes, ma’am.
 

 (BENCH CONFERENCE CONCLUDED. IN OPEN COURT)
 

 [THE PROSECUTION]: And my question was, because a co-defendant is testifying in this case where the defendant may testify does that automatically weigh in any of you all’s minds as to believing or as to determining the outcome of this case one way or the other, or can you weigh and consider all of that?
 

 A: (NO RESPONSE).
 

 Citing
 
 Spicer v. State,
 
 921 So.2d 292, 318 (¶ 55) (Miss.2006) as the sole authority under this argument, Ford argues that the prosecutor’s question was “similar to other remarks that the Mississippi Supreme Court has repeatedly condemned as improper.”
 

 ¶ 32. The comment at issue in
 
 Spicer
 
 was a “send-the-message” comment that was made during closing arguments.
 
 Id.
 
 at 317 (¶ 52). To be precise, the prosecutor in
 
 Spicer
 
 made the following comments during closing arguments:
 

 And you see, that’s why now we are afraid to be good neighbors. Acts like that prevent us from being close to people that we even live near. Acts repaid this way are the reasons that we’re strangers with our very next door neighbors. The reason that we don’t allow ourselves to associate or let our children out in the front yard is because this is the way we get repaid.
 

 May I submit to you that it might be payback time? May I submit to you that this might be an opportunity for us to say in George County: We can’t keep you from doing it, but you will pay the
 
 *799
 
 price for doing it. And other people are going to know that you paid the price.
 

 Id.
 
 at (¶ 51). No portion of the voir dire comments in Ford’s case are remotely similar to the comment at issue in
 
 Spicer.
 
 As
 
 Spicer
 
 is the only authority that Ford cited to support his argument under this heading, it follows that Ford failed to cite relevant authority for this issue. Thus, this issue is proeedurally barred.
 
 Walker,
 
 913 So.2d at 222 (¶ 73); M.R.A.P. 28(a)(6).
 

 XI. MISTRIAL BASED ON LEE’S TESTIMONY
 

 ¶ 33. This issue stems from the following exchange, which occurred during Lee’s direct-examination testimony:
 

 [THE PROSECUTION]: Mr. Lee, did you hear something? Don’t tell us what you heard.
 

 A: Yes.
 

 Q: And what did you hear, did it sound like it came from a voice?
 

 A: Yes.
 

 Q: How did that voice sound?
 

 A: Like a yell.
 

 Q: A yell?
 

 A: Yeah.
 

 Q: Did it sound like a regular—
 

 A: It wasn’t a regular tone like we’re using in here right now. It was a holl[e]r.
 

 [THE PROSECUTION]: Your Hon- or, our position is that the statement would be an excited utterance.
 

 [DEFENSE COUNSEL]: Your Hon- or, I’m going to object to that. His characterization about it being a holler, he’s asking him to draw some kind of a conclusion.
 

 [THE PROSECUTION]: I’m not asking for a conclusion. I am asking for what he heard. Your Honor, one other question.
 

 Q: Mr. Lee, was that while the shooting was happening or before or after the shooting?
 

 A: It was during.
 

 Q: Okay.
 

 THE COURT: That’s all?
 

 [THE PROSECUTION]: Yes, Your Honor. May he proceed? May he answer the question?
 

 THE COURT: What was the question? I mean I heard him say—
 

 [THE PROSECUTION]: He said he heard someone. He heard a human voice make a yell in a loud tone during the shooting. He said it wasn’t like a normal tone like talking in front of the jury now. It was a yell. Our position is that’s the basis for an excited utterance, and he can answer the question.
 

 [DEFENSE COUNSEL]: Your Hon- or, I’ll withdraw [the objection], I don’t think it’s that big of a deal, so I’ll withdraw it.
 

 THE COURT: All right. The objection is withdrawn.
 

 [THE PROSECUTION]: Mr. Lee, did you hear that yell?
 

 A: Yes.
 

 Q: What did it sound like you heard? What did you hear?
 

 A: “Don’t do it, O.J.”[
 
 1
 
 ]
 

 Q: “Don’t do it, O.J.?”
 

 [DEFENSE COUNSEL]: Your Hon- or, that’s not — the yell is what — now he’s adding more stuff to it. That’s objectionable.
 

 THE COURT: The Court is going to instruct the jury to disregard that, and it should be stricken from this record.
 

 [THE PROSECUTION]: Yes, Your Honor.
 

 
 *800
 
 Soon afterward, Ford’s attorney asked to approach the bench. At the bench, Ford’s attorney moved for a mistrial. The circuit court denied Ford’s motion for a mistrial and noted that she had instructed the jury to disregard the comment. Ford claims the circuit court erred when it denied his motion for a mistrial.
 

 ¶ 34. We will reverse a circuit court’s decision to deny a motion for a mistrial if the circuit court’s decision was an abuse of the circuit court’s discretion.
 
 Flora v. State,
 
 925 So.2d 797, 804 (¶5) (Miss.2006). The rationale behind our standard of review is that the circuit court “is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial.”
 
 Id.
 
 “Unless serious and irreparable damage results from an improper comment, the judge should admonish the jury then and there to disregard the improper comment.”
 
 Id.
 
 (citation and quotations omitted).
 

 ¶ 35. As noted above, the circuit court instructed the jury to disregard Lee’s testimony that he heard someone yell, “Don’t do it, O.J.,” contemporaneously with Stuckett’s murder. By instructing the jury to disregard Lee’s testimony, it is clear that the circuit court sustained Ford’s objection. “When a trial judge sustains an objection to testimony and directs the jury to disregard the statement, it is presumed, unless otherwise shown, that the jury followed the directions of the trial judge to disregard such comment or testimony.”
 
 Id.
 
 at 805 (¶ 10) (citation and quotation omitted). Ford does not attempt to demonstrate that the jury did not follow the circuit court’s instructions. That is, Ford failed to demonstrate that the jury did not disregard Lee’s testimony. Likewise, Ford failed to demonstrate that the jury could not have disregarded Lee’s testimony. Accordingly, there is no merit to this issue.
 

 XII. MISTRIAL BASED ON OFFICER LARRY TISABY’S TESTIMONY
 

 ¶ 36. Ford’s argument under this heading is based on the following portion of Officer Larry Tisaby’s testimony during direct examination by the prosecution:
 

 Q: And did you have an occasion to be dispatched as a result of a shooting that occurred that night?
 

 A: Yes. I was dispatched to DRMC in reference to a shooting that took place on Stockton, and while there, there was a citizen, I didn’t get his name, had pointed out a vehicle that was—
 

 [DEFENSE COUNSEL]: Objection.
 

 THE COURT: Wait just a minute, Mr. Tisaby. There’s an objection.
 

 [DEFENSE COUNSEL]: Your Hon- or, I guess I might be premature, but I’m reading this report. I think he’s fixing to say what somebody told him, and I was going to object to that, but I’ll wait. I may be premature in my objection.
 

 [THE PROSECUTION]: No, Your Honor. That is what I’m going to ask him, and in this occasion, it’s not being offered as the truth of the matter asserted. This statement is important to explain why he took his next step as a police officer because the testimony is going to explain why he left DRMC to do what he did afterward. The only way that can be explained is that he state what the citizen told him. So it is under that occasion. I’m not offering it for the truth of the matter asserted, rather why he responded the way he did to the statement.
 

 Next, there was a bench conference outside of the jury’s presence. The circuit
 
 *801
 
 judge noted that, in her opinion, it was irrelevant who provided Officer Tisaby with the information. The circuit court held that Officer Tisaby was prohibited from testifying that he received the information from a citizen. The prosecution then resumed its direct examination of Officer Tisaby as follows:
 

 Q: Okay. Officer Tisaby, I believe you were indicating that you had responded to DRMC?
 

 A: Yes, I did.
 

 Q: Did you receive any information while you were at DRMC?
 

 A: While I was at DRMC, I received information from a citizen that — from someone that—
 

 Q: No, no. Did you receive any information?
 

 A: Yes, I received information.
 

 Q: What was the nature of the information?
 

 A: The information was that there was a vehicle parked at Double Quick that was involved with the incident on Stockton.
 

 [DEFENSE COUNSEL]: If Your Honor please, that’s my objection.
 

 THE COURT: All right. The part that is objectionable will be stricken from the record, and the Court is going to advise the jury not to consider that. Specifically, how he received the information.
 

 At the conclusion of Officer Tisaby’s testimony, Ford moved for a mistrial. Outside of the jury’s presence, Officer Tisaby explained that he did not fully understand that he was not allowed to testify that he received information regarding the fact that a car that was involved with Stuck-ett’s murder was parked at a gas station. Officer Tisaby stated that he did not hear the prosecution’s instructions to avoid testifying as such because he was sick. The circuit court denied Ford’s motion for a mistrial. Ford claims the circuit court erred.
 

 ¶ 37. Ford cites
 
 Campbell v. State,
 
 750 So.2d 1280 (Miss.Ct.App.1999) as authority for his argument that the circuit court should have granted his motion for a mistrial. In
 
 Campbell,
 
 750 So.2d at 1283 (¶ 18), this Court stated:
 

 In regard to the trial court’s admonishing the jury to disregard any reference to testimony or evidence of other criminal charges, we recognize the existence of an abundance of case law that presumes that members of the jury follow the instructions of the court. However, in the present case we are faced with numerous instances where inadmissible and prejudicial testimony was laid before the jury, whether inadvertently elicited through the State’s questioning or through nonresponsive witness testimony. Therefore, due to the repeated interjection of prejudicial matter, tending to establish additional crimes unrelated to his present offense, we conclude that [the defendant] was denied a fair trial.
 

 (Internal citations omitted). The facts in
 
 Campbell
 
 are clearly distinguished from the facts of the case presently before us. The objectionable comments in
 
 Campbell
 
 involved repeated references to the fact that the defendant in that case was involved in crimes separate from the one he faced at trial.
 
 Id.
 
 at 1282-83 (¶ 10). The testimony presently at issue pertained to the means by which Officer Tisaby discovered the location of a car that was involved with the crime. There were not repeated utterances of objectionable testimony. Furthermore, the testimony presently at issue is not nearly as prejudicial as the objectionable testimony in
 
 Campbell.
 
 In fact, Ford does not attempt to explain how he suffered prejudice from the testimony at issue. That apparently inadvertent por
 
 *802
 
 tion of Officer Tisaby’s testimony did not implicate Ford. Officer Tisaby did not connect the car at the gas station to Ford.
 

 ¶ 38. “When a trial judge sustains an objection to testimony and directs the jury to disregard the statement, it is presumed, unless otherwise shown, that the jury followed the directions of the trial judge to disregard such comment or testimony.”
 
 Flora,
 
 925 So.2d at 805 (¶ 10) (citation and quotation omitted). Ford failed to demonstrate that the jury could not have disregarded Officer Tisaby’s testimony. Likewise, Ford failed to demonstrate that the jury did not disregard Lee’s testimony. This issue is without merit.
 

 XIII. EXPERT WITNESS
 

 ¶ 39. Ford claims the circuit court erred when it allowed Hathcock to testify as an expert witness in the field of forensic firearms. Ford does not elaborate as to
 
 why
 
 the circuit court erred when it accepted Hathcock as an expert witness.
 

 ¶40. “There is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court.”
 
 White v. State,
 
 818 So.2d 369, 371 (¶ 7) (Miss.Ct.App.2002) (quoting
 
 Clark v. State,
 
 503 So.2d 277, 280 (Miss.1987)). The appellant has a duty to do more than make mere assertions.
 
 Id.
 
 He must set forth reasons for his arguments and cite authority in support of them.
 
 Id.
 
 If he fails to meet those obligations, this Court has no duty to consider his mere allegations.
 
 Id.
 
 Because Ford merely asserted that the circuit court erred when it accepted Hathcock as an expert witness without explaining
 
 why
 
 the circuit court erred, this issue is procedurally barred on appeal.
 
 Id.
 

 XIV. CUMULATIVE ERRORS
 

 ¶ 41. According to Ford, the cumulative effect of the errors committed at trial requires that we reverse the circuit court and remand this matter for a new trial. We have found no errors. It follows that there can be no cumulative effect of errors that do not exist.
 
 Harrison v. State,
 
 49 So.3d 80, 85 (¶ 18) (Miss.2010).
 

 ¶ 42. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.
 

 [1]
 

 . Lee testified that "O.J.” is Ford’s nickname.