CHANDLER, Justice, for the Court:
¶ 1. After a jury trial, Stevenson Ford was convicted of murder, and the Washington County Circuit Court sentenced him to life without the possibility of parole. Ford appeals.[1] He argues that he was entitled to a mistrial after an officer testified to hearsay that previously had been ruled inadmissible, that he was entitled to a mistrial due to the jury’s premature deliberations, and that the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
FACTS
¶ 2. Marvin Stuckett was shot and killed after leaving a private party at the Southern Whispers club in Greenville, Mississippi. The shooting, which occurred after 2:00 a.m. on September 7, 2008, appears to have been prompted by conflicts between two rival groups. Stevenson attended the private party along with his uncle Daner Ford (“Daner”), Jessie Lee, Jonathan Robinson, Corbin Harris, Freddie Harris, and Tyrone Ford. Stuckett’s friends, Carlos Smith, Nick Harmon Jr., and Christopher York were at the party. Smith testified that, at the party, he got into a fight with Daner, and Stuckett had tried to break up the fight. Harmon testi- *328 fled that, at one point, he was standing by the bar with Stuckett when Ford and his group approached them. Harmon testified that Ford told them to move out of the way, and that Corbin Harris struck Harmon in the head, prompting Stuckett to throw his drink.
¶ 8. Harmon and Stuckett then left the club. Harmon testified that Stuckett dropped him off at his car and the two drove off in their respective vehicles. Harmon followed Stuckett and saw him turn to go home. York testified that, about this time, he left the club and headed to Stuckett’s house. On the way, he saw a green Chevrolet and a blue Chevrolet speeding toward Stuckett’s house. When York neared Stuckett’s house, he heard gunshots. Stuckett lived on Stockton Drive, which intersects with Haycraft Street. When York pulled onto Haycraft Street, he saw the green and blue Chevro-lets turn off Stockton Drive and onto Hay-craft Street, coming toward him. When the cars passed him, he saw Ford, Daner, Lee, and someone else in the blue Chevrolet, and Freddie Harris, Damian Smith, and Robinson in the green Chevrolet.
¶ 4. Stuckett was found bleeding from multiple gunshot wounds under a neighbor’s carport. He was transported to the hospital, where he died. Another of Stuckett’s neighbors, Jessie Coates, testified that he was awakened by gunshots that sounded like fireworks. When Coates looked out the window, he saw a car in front of his house and bursts of light coming from guns. Dr. Thomas Deering, a forensic pathologist who conducted the autopsy of Stuckett, testified that he had been shot in the arm and, fatally, in the back. He recovered a .38 bullet from the body. Detective Erica Brown recovered two shells from an AK-47 assault rifle, two live rounds for an AK-47 assault rifle, and one 9 mm live round from the scene. She also found two 9 mm live rounds in the blue Chevrolet, which had been impounded after Lee’s arrest. Brown testified that no .38 caliber gun was recovered.
¶ 5. Lee testified that he had been the driver of the blue Chevrolet. Lee testified that a group left the club and went to Ford’s house. Then everyone decided to go to an after-hours club. Freddie and Daner left in Freddie’s green Chevrolet, with Lee, Ford, Robinson, and Ken Johnson following in Lee’s blue Chevrolet. Lee was driving, Robinson was in the passenger’s seat, and Ford and Ken were in the back seat. On the way to the after-hours club, they saw a car at an intersection, and the green Chevrolet turned to follow it. Ford told Lee to follow the green Chevrolet. They followed the green Chevrolet to Stockton Drive, and Ford directed Lee to pull over. Lee complied and saw Daner walking outside with a rifle. Lee testified that Ford, Robinson, and Johnson exited the car, and then he heard a lot of gunfire. Lee testified that, at first, he ducked down, but as the shots continued, he looked behind him and saw Ford shooting. Then, Daner, Ford, Robinson, and Johnson got into the blue car and Lee drove away, turning onto Haycraft. Lee was arrested on an outstanding warrant and questioned about Stuckett’s shooting. He told the police he had seen Ford and Daner with guns. Lee testified that he had agreed to plead guilty to accessory after the fact, but was testifying because he felt he should.[2]
¶ 6. Ford asserted an alibi defense and testified that, after leaving Southern Whis *329 pers, he was either in the company of his girlfriend, Latasha Powell,[3] or with David Smith. David Smith testified that he and Ford left the club together and discovered Ford’s car was out of gas. Smith testified that he and Ford walked to the after-hours club, and Ford went in and got a bottle of gin while David searched for a gas can. David further testified that someone lent him a gas can, and then he went to a nearby gas station while Ford waited outside the after-hours club and drank gin. When David returned about seven minutes later, he dropped Ford off at a hotel. Powell testified that she and Ford had booked a room at the hotel earlier that evening. Powell testified that, after booking the room, Ford went to the club, returned to the hotel room at 2:00 or 2:15 а.m., and stayed there until morning. Powell testified that, to protect her privacy, she habitually used the alias “Lakisha Williams” when staying at the hotel. A copy of a hotel receipt showing that Lakisha Williams had checked in on September б, 2008, was admitted into evidence. A hotel employee testified that Ford and Powell were regular customers of the hotel. She corroborated Powell’s use of the alias “Lakisha Williams” at the hotel.
¶ 7. Ford was charged with murder while acting in concert with others and with a firearm enhancement for his use and display of a firearm at the time of the commission of murder under Mississippi Code Section 97-37-37. See Miss.Code Ann. § 97-37-37 (Rev. 2006). The jury found him guilty of murder but rejected the firearm enhancement. The trial court sentenced Ford to life without the possibility of parole.
DISCUSSION
I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING FORD’S MOTIONS FOR A MISTRIAL.
¶ 8. Ford unsuccessfully moved for a mistrial on three occasions. On appeal, he attacks the trial court’s denial of a mistrial on two of those occasions.
A Hearsay testimony of Officer Larry Tisaby
¶9. Officer Tisaby, a patrolman with the Greenville Police Department, testified that he had arrested Lee at a Double Quick gas station and impounded his blue Chevrolet. Tisaby began to testify about how his investigation had led him to the Double Quick. He stated “I was dispatched to [Delta Regional Medical Center] as the result of a shooting that took placed on Stockton, and while there, there was a citizen, I didn’t get his name, had pointed out a vehicle that was — .” Ford objected before the officer could complete his answer, reasoning that the coming response about the citizen’s tip would involve multiple hearsay. A discussion ensued, and the trial court ruled that the officer would not be permitted to testify to the information he had gleaned from a citizen. The court allowed the prosecutor to confer with Tisaby to make sure he understood the court’s ruling. Despite the prosecutor’s instruction, upon continuation of the examination of Tisaby, the following occurred:
Q: Did you receive any information while you were at DRMC?
A: While I was at DRMC, I received information from a citizen that — from someone that—
*330 Q: No, no. Did you receive any information?
A: Yes, I received information.
Q: What was the nature of the information?
A: The information was that there was a vehicle parked at Double Quick that was involved with the incident on Stockton.
[DEFENSE COUNSEL]: If Your Hon- or please, that’s my objection.
The trial court sustained Ford’s objection, ordéred the objectionable part of Tisaby’s testimony struck from the record, and ordered the jury to disregard Tisaby’s statement of how he received the information. At the conclusion of Tisaby’s testimony, the trial court examined Tisaby out of the presence of the jury to ascertain why he had disobeyed the prosecutor’s instructions; Tisaby responded that he had not understood them.
¶ 10. Ford moved for a mistrial, arguing that the jury would be unable to disregard Tisaby’s impermissible testimony. The trial court took the motion under advisement to evaluate the impact of the testimony after more evidence was admitted concerning Lee’s car. Later, the trial court ruled that its admonition to the jury was sufficient to overcome any prejudice caused by Tisaby’s testimony and denied a mistrial.
¶ 11. The trial court must grant a mistrial if an error occurred that substantially and irreparably prejudiced the defendant’s case. Clark v. State, 40 So.3d 531, 538 (Miss.2010) (citing Harrell v. State, 947 So.2d 309, 316 (Miss.2007)). “Where ‘serious and irreparable damage’ has not resulted, the judge should ‘admonish the jury then and there to disregard the impropriety].’ ” Carpenter v. State, 910 So.2d 528, 534 (Miss.2005) (quoting Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990)). “This Court on numerous occasions has held that where the trial judge sustains an appellant’s objection to the testimony of a witness and instructs the jury to disregard the same, prejudicial error does not result from that testimony.” Snelson v. State, 704 So.2d 452, 456 (Miss. 1997). This Court reviews the trial court’s denial of a motion for a mistrial for abuse of discretion. Clark, 40 So.3d at 538. Because the trial court is in the best position to assess the prejudicial effect, we afford the trial court considerable discretion in ruling on a motion for a mistrial. Harrell, 947 So.2d at 316.
¶ 12. Tisaby’s testimony that a citizen told him Lee’s car was connected with the shooting was not particularly prejudicial to Ford in light of other evidence. Tisaby’s testimony did not connect Ford with the car used in the shooting. Further, Tisaby’s testimony was not very influential compared with Lee’s and York’s testimony establishing that Lee’s car was used in the shooting and placing Ford inside that car at the crime scene. Moreover, the trial court properly instructed the jury to disregard Tisaby’s testimony about his tip from the citizen. It is presumed, unless otherwise shown, that the jury followed the instruction given by the trial court. Flora v. State, 925 So.2d 797, 805 (Miss.2006). Ford has not shown that the jury disregarded the instruction. We hold that the trial court did not abuse its discretion by denying a mistrial.

B. Premature jury deliberations

¶ 13. After the close of evidence, but before closing arguments and before the jury had been instructed on the law, the trial judge met with the attorneys in chambers. The judge explained that, a few minutes before closing arguments were to begin, the jury bailiff had informed the court that the jurors had dis *331 cussed the case for a few minutes. The judge spoke with the jurors, ascertained that they had begun deliberations mistakenly,[4] and instructed them to cease. All the jurors and alternate jurors had been present in the jury room during the premature deliberations. On examination by the trial court, the bailiff stated that he had not overheard any discussions of guilt or innocence, and that, in his hearing, the jurors had discussed only the facts of the case.
¶ 14. Ford moved for a mistrial. Relying on Holland v. State, 587 So.2d 848 (Miss.1991), the judge called each juror individually into chambers to ask if he or she had formed an opinion about the defendant’s guilt or innocence and whether he or she could remain fair and impartial. Every juror indicated that he or she had not formed an opinion about the case and could remain fair and impartial. The judge also asked if each juror could put aside any discussion that may have occurred in the jury room, listen to the law given by the court, and decide the case fairly. Each juror said “yes.” Satisfied with the jurors’ affirmative responses, the trial court denied Ford’s motion for a mistrial on the ground that the premature deliberations were not prejudicial and had not denied Ford a fair trial.
¶ 15. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to a fair trial by an impartial jury. Holland v. State, 587 So.2d at 873 (citing Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). “Jurors must not ‘discuss a case among themselves until all the evidence has been presented, counsel have made final arguments, and the case has been submitted to them after final instructions by the trial court.’ ” Seeling v. State, 844 So.2d 439, 447 (Miss.2003). The reason for this rule is that “each juror [must] keep an open mind until the ease has been submitted to the jury.” Holland, 587 So.2d at 873 (quoting U.S. v. Klee, 494 F.2d 394, 396 (9th Cir.1974)). Deliberation prior to the official submission of the case to the jury can be and often is deemed a reversible error. Holland, 587 So.2d at 873. But “not every incident of juror misconduct requires a new trial.” Turner v. State, 748 So.2d 706, 709 (Miss.1999). “The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.” Seeling, 844 So.2d at 448 (quoting Klee, 494 F.2d at 396). Each case stands upon its own particular facts, and the determination of prejudice is within the trial court’s discretion. Turner, 748 So.2d at 709.
¶ 16. In Holland, after the guilt phase of the trial, but before the commencement of the penalty phase, the jury sent out a note which read, “We, the jury, sentence Gerald James Holland to death.” Holland, 587 So.2d at 872. Holland’s motion for a mistrial was denied. The judge addressed the matter by gathering the jurors in the courtroom and instructing them to refrain from deliberations until commencement of the penalty phase. Id. Ultimately, Holland was sentenced to death. Id.
¶ 17. On appeal, Holland argued that the jury’s premature deliberations demonstrated that they had abandoned even the pretense of impartiality. Id. This Court *332 found that the premature deliberations had prejudiced Holland’s right to a fair trial. Id. at 874. We held that the trial judge’s instruction to “refrain from further deliberations,” without any inquiry into each juror’s capacity to remain fair and impartial, was insufficient to cure the prejudice that had resulted from the premature deliberations. Id. However, we explicitly stated that “a different conclusion may have been reached had the trial judge questioned the jurors in order to determine whether each of them could have remained impartial.” Id.
¶ 18. Holland indicated that error arising from premature deliberations could be cured if the trial court questioned the jurors and determined that they remained impartial. That is what occurred in Rogers v. State, 130 So.3d 544, 552 (Miss.Ct.App.2013), in which eight of the thirteen jurors admitted that they had discussed aspects of the case before deliberations began. The trial court questioned each juror as to what the juror had heard and said and whether the juror had formed an opinion on the case. Id. Each juror denied having formed an opinion on the evidence or on the outcome of the case. Id. The trial court denied a motion for a mistrial, and the Court of Appeals found from the circumstances that the ruling had been within the trial court’s discretion and that Rogers was not entitled to a new trial. Id.
¶ 19. Here, the jury deliberated prematurely for a few minutes. The trial court thoroughly questioned each individual juror in chambers to discern the impact of the premature deliberations. Each juror indicated that he or she had not prejudged the question of guilt or innocence and could remain fair and impartial. Each juror also stated that he or she could set aside the premature deliberations and fairly render a verdict based on the law recited by the court. The jury bailiffs testimony that he had not overheard the jurors discussing guilt or innocence corroborated the jurors’ assertions that they had not prejudged the case. Under the particular facts, no prejudice is apparent. Each juror affirmed to the trial court that he or she had not reached a conclusion on the question of guilt or innocence, could remain fair and impartial, and could set the improper discussions aside. We find that the trial court did not abuse its discretion by denying Ford’s motion for a mistrial.
II. THE VERDICT WAS NOT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 20. Ford filed a post-trial motion for a new trial, arguing that the verdict was against the overwhelming weight of the evidence. The trial court denied the motion. This Court “will not order a new trial unless it finds that the verdict ‘is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Osborne v. State, 54 So.3d 841, 846 (Miss.2011) (quoting Bush v. State, 895 So.2d 836, 844 (Miss.2005)). On review of a challenge based on the weight of the evidence, this Court weighs the evidence in the light most favorable to the verdict. Bush, 895 So.2d at 844. “The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (Miss.2000)).
¶21. Ford argues that his case falls within that category of exceptional cases that deserve new trials, stating that only one piece of evidence — the testimony of accomplice Jessie Lee — linked him to the shooting. He also points to the fact that his alibi was corroborated by Smith and Powell. But the evidence solidly present *333 ed another version of what happened on the night of September 7, 2008. Lee testified that he left Southern Whispers in his car with Ford and two other men, who shot and killed Stuckett. Lee stated that he saw Ford shooting. York testified that he saw Ford in Lee’s car leaving the scene of the crime. The evidence did not preponderate so heavily against the verdict that to allow it to stand would sanction an unconscionable injustice, and Ford is not entitled to a new trial.
CONCLUSION
¶ 22. The trial court did not abuse its discretion by denying Ford’s motions for a mistrial, and the verdict was not against the overwhelming weight of the evidence. Therefore, we affirm.
¶ 23. CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL PAY $322 COURT COSTS, $300 ATTORNEY FEES AND A 2% BOND FEE.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. Ford initially perfected an appeal pro se, and his appeal was decided by the Court of Appeals, which affirmed. See Ford v. State, 69 So.3d 788 (Miss.Ct.App.2011). Then, Ford filed a motion for post-conviction relief, and this Court remanded the case to the Washington County Circuit Court to determine whether Ford knowingly and intelligently had waived his right to appellate counsel. See Ford v. State, 121 So.3d 916 (Miss.2013). The circuit court found that Ford had not knowingly and intelligently waived his right to appellate counsel and appointed the Indigent Appeals Division of the Office of the State Public Defender to represent Ford. Subsequently, this Court granted Ford’s motion to withdraw the Court of Appeals mandate, reinstate his appeal, and issue a briefing schedule. Id. Ford’s appeal is now before the Court.

. The trial court gave a cautionary instruction regarding the testimony of Lee. See Williams v. State, 32 So.3d 486 (Miss.2010).

. Ford and Powell were married after his arrest, and Powell’s name was Latasha Ford at trial.

. The jurors informed the judge that they erroneously had believed the jury bailiff had instructed them to begin deliberations. The record reflects that the trial court properly instructed the jury throughout the trial to refrain from deliberations until instructed to begin by the court, and that, before dismissing the jury to address jury instructions with counsel, the court instructed it that "all of the restrictions that we have put on you across the week are now magnified.”